Dan HALLAHAN, Appellant,

v.

THE COURIER–JOURNAL, Appellee.

No. 2003–CA–000526–MR.

Court of Appeals of Kentucky.

June 25, 2004.

Grant S. Roark, Louisville, KY, for appellant.

Jon L. Fleischaker, Ashley C. Pack, Louisville, KY, for appellee.

Before EMBERTON, Chief Judge;[1] SCHRODER and TACKETT, Judges.

*OPINION*

TACKETT, Judge.

Dan Hallahan appeals from an opinion and order of the Jefferson Circuit Court that granted summary judgment to The Courier–Journal and dismissed Hallahan's complaint for employment related disability discrimination brought pursuant to Kentucky Revised Statutes (KRS) Chapter 344. We affirm.

## I. FACTUAL BACKGROUND

Hallahan became employed at The Courier–Journal in the sales department in May 1986 while attending college. In 1990, he was transferred to the circulation department and eventually promoted to the position of Metro Division Manager. As a division manager in the company's main offices, Hallahan's job duties included supervising 30 to 40 newspaper carriers, training carriers, placing carriers in open delivery routes, delivering newspapers to customers who did not receive a newspaper, filling in temporarily when a carrier was unavailable, and other related general customer services.

In early 1998, The Courier–Journal decided that as a part of a restructuring plan related to the delivery of newspapers, all division managers, including Hallahan, would be relocated from the main offices in downtown Louisville to various distribution centers where the bulk newspapers were received from the printer and redistributed to individual carriers for designated surrounding areas. In conjunction with these new distribution procedures, division managers were required to remove the newspapers from the semi-trailer delivery trucks and distribute the bundled newspapers to the individual carriers under their supervision. In addition, division managers became personally responsible for delivering individual newspapers to customers who received no or incomplete newspapers.

In March 1998, Hallahan relocated to a distribution center from the main downtown offices and assumed the above-described additional responsibilities requiring him to physically handle heavy bundles of newspapers, which he had not done previously. Hallahan alleges that as a result of the physical labor and lifting required, he injured his lower back[2] in August 1998 but continued working. Hallahan states that he gave his supervisor an admittedly vague note from his physician in December 1998, which recommended restrictions on his lifting at work.[3]

In January 1999, Chris Bauscher became Hallahan's new direct supervisor. Hallahan claims that even after notifying Bauscher of his back problem, Bauscher told him that he needed someone that could do the manual labor and that if he could not, he needed to leave. Hallahan asserts that he felt compelled to continue to do some lifting of newspaper bundles, but other employees helped him when they were available.

---

1. Judge Emberton concurred in this opinion prior to his retirement effective June 2, 2004.

2. In August–September 1998, Hallahan was diagnosed as having spinal stenosis and a mild herniation of a lumbar disc. He filed an application for workers' compensation in February 2000, which was ultimately denied because he was unable to establish work-related causation for his impairment.

3. The Courier–Journal has no record that Hallahan furnished this information to his supervisors.

In late July or early August 1999, Hallahan applied for an open position in single copy sales, but he was not interviewed for and did not receive the position. Although admitting he has no firm supporting evidence, Hallahan contends that the failure to even give him a courtesy interview was related to the restrictions associated with his spinal condition. Shortly thereafter, Hallahan discovered a note in his personnel file stating that while his performance was satisfactory under prior evaluation standards, it would be considered unsatisfactory under newer standards. The circumstances surrounding placement of the note in his file are unknown.

In September 1999, Hallahan applied for an open position as State Division Manager, which had duties and salary similar to the job he was performing except that it involved a rural area in Indiana with delivery boxes along roadways. Hallahan asserts that Tom Campbell, the supervisor of the State Division, initially encouraged him to apply for the position, but Campbell later expressed reservations based on Hallahan's physical limitations. Hallahan was not hired for the State Division Manager's position, but The Courier–Journal provided evidence that Campbell had no authority over the decision on filling that position.

In October 1999, Bauscher gave Hallahan a written reprimand that detailed several instances of violations of company policies occurring between September 1 and October 20, 1999. In the letter, Bauscher identified one incident where Hallahan had placed a carrier on a route prior to completing the requirement that the carrier be bonded; one incident where Hallahan allowed a carrier to be hired for a route without proper training resulting in faulty performance; and seven incidents where Hallahan failed to deliver replacement newspapers to customers who had not received their newspapers from the carrier.

Bauscher warned Hallahan that additional violations of company policies would result in further disciplinary action up to and including termination.

In November 1999, Hallahan met with several supervisors including Bauscher concerning his physical limitations after he complained to Paula Warman, the Employee Relations Manager, about his difficulty in performing the manual labor associated with his job. In the meeting, Hallahan was told that his physical restrictions would be accommodated by not requiring him to lift or move newspaper bundles out of the delivery trucks, but instead allowing him to use a pushcart. Hallahan alleges that even after this meeting, he was required to do some lifting of heavy bundles of newspapers and carrying newspapers in a shoulder bag on routes while replacing absent carriers. Following the meeting, in late November 1999, Hallahan provided a written statement from his family physician stating that he should not do any heavy lifting or lifting above the shoulder level. After requesting clarification, The Courier–Journal received a second letter from Hallahan's physician stating that Hallahan should not be required to bend or lift objects over 20 pounds, or lift his arms above chest level.

On February 9, 2000, company management and human resources personnel met with Hallahan concerning new policy violations occurring after the October 1999 written reprimand that were similar to the prior violations. For instance, on two occasions in early February 2000, Hallahan failed to deliver nine replacement newspapers, and in late January, he again allowed a carrier to be placed on a route without personally orienting him to the route. Hallahan argued that he had not received the messages on his pager about the replacement newspapers and that the carrier was experienced and was familiar

with the new route. On February 21, 2000, The Courier–Journal notified Hallahan in writing that he was being terminated for repeated policy violations after having received a prior reprimand and warning concerning additional violations.

## II. PROCEDURAL HISTORY

On July 27, 2001, Hallahan filed a complaint for disability discrimination and retaliation pursuant to The Kentucky Civil Rights Act, KRS 344 *et seq.* He claimed that The Courier–Journal denied him alleged promotions to the State Division Manager, Division Manager in another area, and Single Copy Sales positions, and terminated his employment because of The Courier–Journal's perception about his lower back condition. Hallahan stated that non-disabled employees with less experience and education had been hired for the positions he did not receive.

On April 16, 2002, The Courier–Journal filed a motion for summary judgment arguing that Hallahan had failed to present evidence that he was disabled or regarded as disabled, or that he suffered an adverse employment action because of his alleged disability under the standards applicable to a disability cause of action. The Courier–Journal suggested that Hallahan was terminated because of inadequate job performance. On May 23, 2002, Hallahan filed a response contending there was sufficient evidence that he had been perceived as having a disability and was treated differently because of his lower back condition. He asserted that The Courier–Journal fabricated the claim of inadequate performance in order to justify terminating him. On July 22, 2002, the trial court entered a brief opinion and order denying the motion for summary judgment based on a finding that genuine issues of material fact were in dispute.

In preparation for trial, on October 2, 2002, the parties entered into and filed joint stipulations narrowing the issues. Hallahan stipulated that he did not have a "disability" as defined in the disability discrimination statute while employed at The Courier–Journal, and that his only remaining claim was based on the ground that The Courier–Journal regarded him as having an impairment that substantially limited the major life activity of working. Given Hallahan's abandonment of some of his claims, on November 8, 2002, The Courier–Journal filed a renewed motion for summary judgment. It again argued that there was insufficient evidence that management at The Courier–Journal regarded Hallahan as disabled or that he suffered any adverse treatment in his employment because of an alleged disability. In response, Hallahan asserted that The Courier–Journal's arguments were barred by res judicata because the trial court had previously denied summary judgment raising the same grounds. The Courier–Journal filed a reply stating that res judicata does not apply in this situation.

On February 11, 2003, the trial court entered an opinion and order granting The Courier–Journal's motion for summary judgment and dismissing Hallahan's complaint. The court held that res judicata did not apply because the first order denying summary judgment was not a final order, and there was no evidence showing that The Courier–Journal had perceived Hallahan as having a disability that substantially limited a major life activity. This appeal followed.

## III. STANDARD OF REVIEW

The standard of review on appeal when a trial court grants a motion for summary judgment is whether the trial court correctly found there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. *Palmer v. Interna-*

*tional Ass'n of Machinists,* Ky., 882 S.W.2d 117, 120 (1994); *Stewart v. University of Louisville,* Ky.App., 65 S.W.3d 536, 540 (2001); Kentucky Rules of Civil Procedure (CR) 56.03. The movant bears the initial burden of convincing the court by evidence of record that no genuine issue of fact is in dispute, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476, 482 (1991). *See also City of Florence, Kentucky v. Chipman,* Ky., 38 S.W.3d 387, 390 (2001). "The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.,* Ky., 50 S.W.3d 195, 199 (2001)(citing *Harker v. Federal Land Bank of Louisville,* Ky., 679 S.W.2d 226 (1984)). The court must view the record in the light most favorable to the nonmovant and resolve all doubts in his favor. *Commonwealth v. Whitworth,* Ky., 74 S.W.3d 695, 698 (2002); *Lipsteuer v. CSX Transportation, Inc.,* Ky., 37 S.W.3d 732, 736 (2000). "The inquiry should be whether, from the evidence of record, facts exist which would make it possible for the non-moving party to prevail. In the analysis, the focus should be on what is of record rather than what might be presented at trial." *Welch v. American Publishing Co. of Kentucky,* Ky., 3 S.W.3d 724, 730 (1999). See also *Murphy v. Second Street Corp.,* Ky.App., 48 S.W.3d 571, 573 (2001). An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved. *See Lewis v. B & R Corp.,* Ky.App., 56 S.W.3d 432, 436 (2001); *Barnette v. Hospital of Louisa, Inc.,* Ky.App., 64 S.W.3d 828, 829 (2002).[4] Given similar language and the stated purpose of KRS Chapter 344 to embody the federal civil rights statutes, including the Americans

**4.** We note that Hallahan has not challenged the trial court's decision that it was not precluded from granting The Courier-Journal's second summary judgment motion after denying the first because of res judicata. Nonetheless, we agree with the trial court that res judicata is not applicable because the first order denying the summary judgment motion was not a final judgment and it did not involve a separate, collateral proceeding. *See generally Yeoman v. Commonwealth, Health Policy Board,* Ky., 983 S.W.2d 459 (1998). The more applicable doctrine, which Hallahan failed to raise, is law of the case. The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the lawsuit. *See Rezzonico v. H & R Block, Inc.,* 182 F.3d 144, 148 (2nd Cir.1999). Res judicata regulates judicial affairs in subsequent actions following a final judgment; whereas, law of the case involves issue preclusion in the same case prior to final judgment. *Pacific Employers Ins. Co. v. Sav-A-Lot of Winchester,* 291 F.3d 392, 398–99 (6th Cir.2002); *N.L.R.B. v. Coca-Cola Bottling Co. of Buffalo, Inc.,* 55 F.3d 74, 77 (2nd Cir.1995). A judge has discretionary authority to reconsider a ruling. *See, e.g.,* CR 54.02; 18B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 4478.1 (2d ed.2002). Generally, a judge may reexamine an earlier ruling and rescind it if he has a reasonable conviction that it was wrong and it would not cause undue prejudice to the party that benefited from it. *See Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir.1995); *Pacific Employers,* 291 F.3d at 398 (court may reconsider prior determination under abuse of discretion standard of review). It is well established that a trial court may reconsider and grant summary judgment to a party subsequent to an earlier denial. *See* 18B Wright & Miller, *Federal Practice and Procedure* § 4478.1, at 699–700; *Curran v. Kwon,* 153 F.3d 481, 486–87 (7th Cir.1998)(denial of the first motion for summary judgment was not the law of the case so as to bar allowance of a second motion); *Fisher v. Trainor,* 242 F.3d 24, 29 n. 5 (1st Cir.2001)(indicating it is simply wrong to say that denial of summary judgment forecloses a subsequent grant of summary judg-

with Disabilities Act (ADA), this court may look to federal case law in interpreting the Kentucky Civil Rights Act with respect to Hallahan's claim of disability discrimination under KRS 344.040. *See, e.g., Howard Baer, Inc. v. Schave,* Ky., 127 S.W.3d 589 (2003)(citing *Bank One, Kentucky, N.A. v. Murphy,* Ky., 52 S.W.3d 540, 544 (2001)); *Noel v. Elk Brand Mfg. Co.,* Ky. App., 53 S.W.3d 95 (2000); *Brohm v. JH Properties, Inc.,* 149 F.3d 517, 520 (6th Cir.1998); *Summers v. Middleton & Reutlinger, P.S.C.,* 214 F.Supp.2d 751, 755 (W.D.Ky.2002); KRS 344.020(1)(a); compare 42 U.S.C. § 2000 e–2(a)(1) with KRS 344.040(1).

## IV. DISABILITY DISCRIMINATION

### A. *Prima Facie* Case

 Under KRS 344.040(1), it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because the person is a "qualified individual with a disability." The plaintiff bears the initial burden of establishing a prima facie case of disability discrimination against the defendant.[5] *Hedrick v. Western Reserve Care System,* 355 F.3d 444 (6th Cir.2004); *Snead v. Metropolitan Property & Cas. Ins. Co.,* 237 F.3d 1080 (9th Cir.2001). In order to establish a prima facie case of discrimination based on a disability, the plaintiff must show: (1) that he had a disability as that term is used under the statute (i.e., the Kentucky Civil Rights Act in this case); (2) that he was "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment decision because of the

ment under law of the case). Hallahan failed to establish undue prejudice from the trial court's action. Accordingly, the trial court was not precluded from and did not abuse its discretion in reconsidering its prior decision denying summary judgment.

**5.** The Sixth Circuit Court of Appeals has created two procedural sets of criteria for establishing a disability discrimination claim based on the use of direct or circumstantial evidence. Where the plaintiff presents direct evidence of disability discrimination, the plaintiff bears the burden of establishing: (1) that he is disabled; (2) that he is "otherwise qualified" for the position despite his disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. The employer bears the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship on the employer. Where the plaintiff relies on circumstantial evidence, he may present a prima facie case of disability discrimination by showing: (1) he is disabled; (2) he is "otherwise qualified" for the position with or without reasonable accommodation;

(3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled plaintiff was replaced. The employer must then offer a legitimate explanation for its action. If the employer satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. *See Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1186 (6th Cir.1996); *Hedrick v. Western Reserve Care System,* 355 F.3d 444, 452–53 (6th Cir.2004). The latter prima facie scheme is derived from the burden shifting approach developed for discrimination in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Sixth Circuit has stated that "[t]he direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Authority,* 128 F.3d 337, 348–49 (6th Cir.1997)(involving age and race discrimination). This dual procedural paradigm does not affect the outcome in the current case because both paths require the plaintiff to establish that he is "disabled" under the statute, which we find Hallahan did not do.

disability. *See Henderson v. Ardco, Inc.,* 247 F.3d 645, 649 (6th Cir.2001); *Wright v. CompUSA, Inc.,* 352 F.3d 472, 475 (1st Cir.2003); *Cameron v. Community Aid for Retarded Children, Inc.,* 335 F.3d 60, 63 (2nd Cir.2003).

 Under KRS 344.010(4), a "disability" is defined as:

(a) A physical or mental impairment[6] that substantially limits one (1) or more of the major life activities of the individual;

(b) A record of such an impairment; or

(c) Being regarded as having such an impairment.

*See also* 42 U.S.C. § 12102(2). Whether the plaintiff has an impairment and whether the conduct affected by the impairment is a major life activity under the statute are legal questions. *See Doebele v. Sprint/United Management Co.,* 342 F.3d 1117, 1129 (10th Cir.2003). The ultimate determination of whether the impairment substantially limits the major life activity generally is a factual issue for the jury, but it may be resolved upon summary judgment under the appropriate circumstances. *Id.* at 1130 n. 5. *See also Bristol v. Board of County Commissioners of the County of Clear Creek,* 281 F.3d 1148, 1157–60 (10th Cir.2002).

 While The Courier–Journal disputes whether the failure to hire Hallahan for the other positions within the company constituted adverse employment decisions because they would have been lateral transfers, *see, e.g., Mercer v. Brunt,* 299 F.Supp.2d 21, 29 (D.Conn.2004)(failure to grant lateral transfer not an adverse employment action), we need not determine that question because his termination clearly was an adverse action under the

law. *See Snead,* 237 F.3d at 1089; *Kersting v. Wal–Mart Stores, Inc.,* 250 F.3d 1109, 1115 (7th Cir.2001). Furthermore, Hallahan was "otherwise qualified" for the job positions. Consequently, we will assume that Hallahan could satisfy the second and third elements of his prima facie case. The central issue is whether he was "disabled" under the statute.

### B. "Regarded As" Basis for Disability Claim

 In the current case, Hallahan has admitted that he was not actually disabled and does not assert a claim based on a record of impairment, but relies solely on the "regarded as" basis for his claim. As with actual impairments, the perceived impairment under the "regarded as" prong must be one that, if real, would substantially limit a major life activity of an individual. *See Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1216 (11th Cir. 2004). In *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 2149–50, 144 L.Ed.2d 450 (1999), the Supreme Court stated that an individual may fall within the provision for being "regarded as" having a disability if:

(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment

---

**6.** The Equal Employment Opportunity Commission's (EEOC) regulations include musculoskeletal disorders or conditions within the definition of physical impairments. 29 C.F.R. § 1630.2(h)(1).

when, in fact, the impairment is not so limiting.

See also 29 C.F.R. § 1630.2(*l*). The Court noted that the purpose of the "regarded as" prong is to cover individuals rejected from a job because of the myths, fears and stereotypes associated with disabilities. 527 U.S. at 489–90, 119 S.Ct. at 2150 (citing 29 C.F.R. pt. 1630, App. § 1630.2(*l*)).

■■■ The record suggests, and The Courier–Journal does not contest, that Hallahan had a physical impairment, i.e., a herniated lumbar disc, that somewhat restricted his physical activities. The mere fact that The Courier–Journal had knowledge of Hallahan's medical problems, however, was not sufficient to show that it regarded him as having a disabling impairment. *See Kelly v. Drexel University*, 94 F.3d 102, 109 (3rd Cir.1996); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir.1996); *Conant v. City of Hibbing*, 271 F.3d 782, 785 (8th Cir.2001).

■■■ In analyzing whether an impairment substantially limits a major life activity, these two factors should be considered in tandem with respect to the particular individual claimant and life activity. The Supreme Court has noted that generally, "substantially" suggests "considerable" or "specified to a large degree." *Sutton*, 527 U.S. at 491, 119 S.Ct. at 2150. See also *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir.2002)(noting that "substantially limits" and "major life activities" are terms of art under the statutes). The EEOC defines

"substantially limited" as meaning: "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1).

## C. "Working" as "Major Life Activity"

■■■ According to his stipulations, Hallahan relies on the major life activity of "working" to support his claim.[7] The issue of whether a plaintiff's impairment substantially limits the major life activity of working involves a multi-level analysis of the particular plaintiff's job skills and the nature of the jobs he was prevented from performing as well as those he is still able to perform. The inquiry looks to the specific plaintiff's education level, training, job skills, expertise, and knowledge in relation to his actual and potential employment status. *Gelabert–Ladenheim v. American Airlines, Inc.*, 252 F.3d 54, 59 (1st Cir. 2001); *Sutton*, 527 U.S. at 483, 119 S.Ct. at 2147 ("The definition of disability also requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.' [42 U.S.C.] § 12102(2). Thus, whether a person has a disability

---

7. The Supreme Court in *Sutton* questioned and recognized the conceptual difficulty in classifying working as a major life activity because it in effect creates a circular argument—i.e., if one is excluded from working because of an impairment then he is disabled and one is disabled because he is excluded from working or in other words the inability to work cannot logically be both the cause and result of the same disability—but decided not to exclude it from the category of major

life activities. 527 U.S. at 492, 119 S.Ct. at 2151. *See also Sullivan v. Neiman Marcus Group, Inc.*, 358 F.3d 110 (1st Cir.2004)(discussing analytical problems with including working as a major life activity). *But see* Reed L. Russell, *Arguing for More Principled Decision Making in Deciding Whether an Individual is Substantially Limited in the Major Life Activity of Working under the ADA*, 47 Cath. U.L.Rev. 1057 (1998).

under the ADA is an individualized inquiry."); 29 C.F.R. pt. 1630, App. § 1630.2(j)("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual"). A plaintiff's post-impairment work history may be relevant. *Gelabert–Ladenheim*, 252 F.3d at 59; *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 (4th Cir.2002)(obtaining a new job is evidence that an impairment is not substantially limiting). A plaintiff must also show that his impairment significantly restricts his ability to perform either a class of jobs or a broad range of jobs, and not just his current or a single job. *Sutton*, 527 U.S. at 491–92, 119 S.Ct. at 2151. The EEOC regulations provide with respect to the major life activity of working:

> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

> (ii) In addition to the factors listed in paragraph (j)(2) [8] of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

> (A) The geographical area to which the individual has reasonable access;

> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(*l*)(3). As a result, a plaintiff must demonstrate not only that the employer thought that he was impaired in his ability to do the particular job, but also that the employer regarded him as substantially impaired in either a class of jobs or a broad range of jobs in various classes. *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523, 119 S.Ct. 2133, 2138, 144 L.Ed.2d 484 (1999); *Sullivan v. Neiman Marcus Group, Inc.*, 358 F.3d at 117; *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 647 (2nd Cir. 1998); *Henderson v. Ardco, Inc.*, 247 F.3d at 651–52; *Cooper v. Olin Corp., Winchester Division*, 246 F.3d 1083, 1089–90 (8th Cir.2001); *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.2000); *Doebele v. Sprint/United Management Co.*, 342 F.3d at 1133.

 Hallahan contends that the trial court incorrectly concluded there was insufficient evidence that The Courier–Journal perceived him as having a disability. He asserts that the trial court erroneously discounted alleged direct evidence of discrimination consisting of Tom Camp-

8. 29 C.F.R. § 1630.2(j)(2) lists the following factors: (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

bell's statements suggesting that Hallahan was not offered the State Division Manager's position because of his back condition. Direct evidence of an unlawful employment practice is evidence that directly reflects the alleged animus and that bears squarely on the contested employment decision. *See Patten v. Wal–Mart Stores East, Inc.,* 300 F.3d 21, 25 (1st Cir.2002); *Deneen v. Northwest Airlines, Inc.,* 132 F.3d 431, 436 (8th Cir.1998)(direct evidence is that which demonstrates a specific link between the alleged discriminatory animus and the challenged employment decision sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision to take the adverse employment action); *Sheehan v. Donlen Corp.,* 173 F.3d 1039, 1044 (7th Cir.1999)(direct evidence is evidence that in and of itself suggests someone with managerial authority was animated by an illegal employment criterion). However, direct evidence does not include stray remarks in the workplace, statements by decision-makers unrelated to the decisional process itself, or statements by nondecision-makers. *Crock v. Sears, Roebuck & Co.,* 261 F.Supp.2d 1101, 1114 (S.D.Iowa 2003). *See also Patten, supra; Sheehan, supra; Spivey v. B.F. Goodrich Co.,* 246 F.Supp.2d 714, 720 (W.D.Ky. 2003).[9] While Tom Campbell was the supervisor of the State Division, The Courier–Journal presented evidence that he had no role in the decisions to fill the position, which Hallahan failed to rebut. Tom Campbell also was not involved in the decisions concerning the other positions and Hallahan's termination.

### 1. Substantial Impairment in Class of Jobs or Broad Range of Jobs

Even assuming that Campbell's statement reflected the attitude of the decision-makers at The Courier–Journal, Hallahan has presented insufficient evidence that The Courier–Journal perceived him as substantially impaired in either a class of jobs or a broad range of jobs. Hallahan maintains that the division management position constitutes a class of jobs, but this view is too restrictive.

In order to determine a class of jobs, courts may look to the number and types of jobs utilizing similar training, knowledge, skills, and ability required to perform the work at issue, and the geographical area available to the employee. *See* 29 C.F.R. § 1630.2(*l* )(3)(ii)(A) and (B). Common groupings within a particular industry would be relevant. *See DePaoli v. Abbott Laboratories,* 140 F.3d 668, 673 (7th Cir. 1998). The Supreme Court stated in *Sutton,* "To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." 527 U.S. at 492, 119 S.Ct. at 2151 (plaintiffs regarded as precluded from holding positions as global airline pilots because of poor vision were not within a class of jobs because other pilot jobs utilizing plaintiffs' skills were available). *See also Murphy v. United Parcel Service,* 527 U.S. at 524–25, 119 S.Ct. at 2138–39 (plaintiffs regarded as unable to perform mechanic job requiring Department of Transportation certification not within a class of jobs because other mechanic jobs available); *Black v. Roadway Express, Inc.,* 297 F.3d 445 (6th Cir.2002)(plaintiff excluded from truck driving jobs on trucks without cruise con-

---

**9.** The cases cited by Hallahan on the relevance of statements by non-decision makers are distinguishable because none deals with disability discrimination.

trol because of knee impairment not substantially limited in class of jobs); *Shipley v. City of University City*, 195 F.3d 1020 (8th Cir.1999) (firefighter position not considered a class of jobs under ADA).

The division manager's position is a single particular job, rather than a substantial class of jobs. Hallahan presented no evidence on how the training, knowledge, skills or abilities used in this position applied within the publishing industry or other jobs in the geographical area. The lifting of bundles of newspapers became a part of the division manager's position only after The Courier–Journal reorganized its distribution system. It was only one aspect of the job with this employer. Hallahan has not shown that The Courier–Journal misperceived him as having an impairment or limitation that would have disqualified him from any jobs other than those with this single employer. Hallahan contends the State Division Manager's job in Indiana that he was denied required less strenuous physical activity, but denial of a particular job of his choice likewise does not concern a substantial class of jobs. Thus, Hallahan has not shown that The Courier–Journal regarded him as being substantially limited in the major life activity of working.

### D. "Lifting" as Major Life Activity

Although Hallahan relies on the major life activity of working, his impairment and restrictions implicate his ability to lift items. Lifting has been recognized as conduct subject to inclusion within the definition of major life activities. *See, e.g., Wood v. Crown Redi–Mix, Inc.*, 339 F.3d 682, 684 (8th Cir.2003); *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 21 (1st Cir.2002); *Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1158 (10th Cir.2002); *Henderson v. Ardco, Inc., supra*; 29 C.F.R. pt. 1630, App. § 1630.2(i).

In *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002), the Supreme Court defined "major life activities" other than working as "those activities that are of central importance to daily life." The Court also held that to be substantially limiting, an impairment must do more than interfere with the activity in a minor way or for a temporary period. "[A]n individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." 534 U.S. at 198, 122 S.Ct. at 691.

Even though Toyota Motor dealt with the activity of manual tasks, the court in *Mack v. Great Dane Trailers*, 308 F.3d 776 (7th Cir.2002), applied the same criteria to a "regarded as" claim involving the activity of lifting.

We see no basis for confining *Toyota's* analysis to only those cases involving the specific life activity asserted by the plaintiff in that case. *Toyota's* point was that an inability to perform "occupation-specific" tasks does not necessarily show an inability to perform the central functions of daily life, and that analysis applies equally to the work-related restriction at issue here. An inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life. There may well be cases in which, because of the nature of the impairment, one could, from the work-restriction alone, infer a broader limitation on a major life activity. An inability to lift even a pencil on the job might suggest an inability to lift a toothbrush, for example, or to otherwise care for oneself-or at least might support an inference that the employer believed the employee was so limited. But the work

restriction in this case was not nearly of that nature, and instead fits neatly into the sort of occupation-specific limitation at issue in *Toyota*. Under *Toyota*, evidence of such a restriction, without more, is insufficient to show a substantial limitation on a major life activity.

Furthermore, while *Toyota* did not address a claim that the employee was regarded as disabled, its analysis still controls in this case. Under the ADA, the concepts of "substantially limits" and "major life activity" are the same whether the employee is proceeding under a claim that she is actually disabled or regarded as disabled.

308 F.3d at 781 (citations omitted). *See also EEOC v. United Parcel Service, Inc.*, 306 F.3d 794 (9th Cir.2002)(applying *Toyota Motor's* requirement that impairment significantly affect daily life to visual impairment); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1025 (8th Cir.2003)(finding *Toyota Motor's* analysis applicable to claims involving life activities of gripping, reaching, lifting, standing and walking).

▇▇▇▇▇ Hallahan suffered from a back impairment with restrictions from his physician that were conveyed to The Courier–Journal that he not be required to lift objects over twenty pounds above shoulder level, but that "working at the waist level is certainly acceptable." Several cases have found that employers who perceived employees with lifting restrictions comparable to Hallahan's were not liable for discrimination because the impairment did not qualify as substantially limiting the major activities of lifting or working. *See, e.g., Pryor v. Trane Co.*, 138 F.3d 1024 (5th Cir.1998)(no repetitive lifting over 20 pounds or constant lifting over 10 pounds); *Helfter v. United Parcel Service, Inc.*, 115 F.3d 613 (8th Cir.1997)(frequent lifting of 10 pounds); *Thompson v. Holy Family Hospital*, 121 F.3d 537 (9th Cir.1997)(lift-ing no more than 25 pounds continuously); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369 (6th Cir.1997)(frequent lifting of 10 pounds); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635 (2nd Cir. 1998)(10–20 pound lifting restriction); *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346 (4th Cir.1996)(25 pound lifting limitation not significant restriction on ability to lift or work). A general lifting restriction without evidence that it significantly impacts the ability to perform major life activities is insufficient. *See, e.g., Helfter*, 115 F.3d at 613 (conclusory statements of impact on daily life activities insufficient). Where an impairment is not so severe that it is substantially limiting on its face, a plaintiff must present evidence showing that his restriction reduces his capabilities below those of an average person. *See Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir.2001). Under the "regarded as" prong, the plaintiff must show that the employer misperceived the existence or extent of the plaintiff's limitation of his daily life activities. *Id.* Hallahan has presented no evidence that The Courier–Journal perceived him as limited in tasks associated with daily life.

In the recent case of *Howard Baer, Inc. v. Schave*, Ky., 127 S.W.3d 589 (2003), the Kentucky Supreme Court applied the Toyota Motor analysis in finding that Schave failed to show that his employer regarded him as substantially limited in any major life activities under KRS 344.010 because of a shoulder impairment that limited his ability to lift frequently more than 40 pounds over his head. The Court held that while the employer felt Schave was not able to return to work as a milk-peddle driver, he did not show that the employer perceived him as not qualified to perform a broad range of jobs or that he was significantly restricted in the central functions of daily life.

In the current case, Hallahan established that he suffered a spinal impairment that led his physician to recommend restrictions on his lifting over 25 pounds above his shoulders. Viewing the evidence favorably to him, Hallahan failed to present evidence even creating an inference that The Courier–Journal misperceived his impairment as precluding him from a class of jobs or a broad range of jobs, or severely restricting his ability to perform tasks central to daily life. As a result, Hallahan failed to create a genuine issue of material fact that he was "disabled" because he was regarded as substantially limited in the major life activities of work or lifting.

Thus, the trial court did not err in holding that there were no genuine issues of material fact in dispute and that The Courier–Journal was entitled to summary judgment as a matter of law.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.