Zachary S. BUDA, Appellant,

v.

Mark J. SCHULER, Appellee.

No. 2010–CA–001087–MR.

Court of Appeals of Kentucky.

Sept. 23, 2011.

Christopher McDowell, Cincinnati, OH, for appellant.

Scott M. Powers, Newport, KY, for appellee.

Before KELLER and LAMBERT, Judges; SHAKE,[1] Senior Judge.

## OPINION

SHAKE, Senior Judge:

Zachary Buda (Buda) appeals from a Campbell Circuit Court summary judgment in favor of Mark Schuler (Schuler). In its judgment, the trial court found that Buda was liable for injuries sustained by Schuler and awarded Schuler damages in the amount of $468,281.14. Buda bases his appeal on two grounds: (1) that there was a material issue of genuine fact concerning his liability; and (2) that the trial court erred by awarding Schuler damages for lost profits to his corporation and punitive damages. Following a careful review of the record and applicable case law, we affirm the circuit court summary judgment.

## I. Factual Background

Schuler is a chiropractor with offices located in Kentucky and Ohio. On September 7, 2007, Schuler walked from his office in Newport, Kentucky, to a local bar to meet Cindy Mei (Mei), who worked at the bar. Schuler and Mei were acquaintances and had only seen one another at the bar a few times. Schuler drank a couple of beers and waited for Mei to finish her shift. After the bar closed, Mei drove Schuler to "The Liar's Club," a bar and grill located a couple of blocks away.

While at "The Liar's Club," Schuler and Mei ordered a few beers and started playing pool. Shortly thereafter, Buda, who was admittedly intoxicated, walked to the pool table and started talking to Schuler and Mei. When Mei left the billiard area to order another beer, Buda began bullying Schuler and criticizing his ability to play pool. Schuler asked him to leave. Eventually, Buda walked away.

As the bar closed, Schuler and Mei walked into the parking lot to enter Mei's car. Buda approached Schuler and a physical altercation resulted.

### A. Buda's Version of the Facts

When Schuler told Buda to leave their table, Buda claims that Schuler used profanity and abrasive language. Buda claims that Schuler's language and behavior inside the bar prompted him to confront Schuler in the parking lot. In his deposition, Buda claimed that this confrontation led to both parties cursing at each other. Then, Schuler pushed Buda backwards and got into the passenger's side of the car. Buda admits that he prevented Schuler from closing the passenger door and repeatedly hit Schuler with his fists. However, Buda claims that he did not have any weapons or objects in his hands and only hit Schuler's mid-arm and torso area. During the altercation, Schuler climbed into the backseat of Mei's car. Buda testified that neither Schuler nor Mei ever mentioned that Schuler's leg was injured.

1. Senior Judge Ann O'Malley Shake sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

## B. Schuler's Version of the Facts

In his deposition, Schuler claims that he did not curse or use abrasive language toward Buda while playing pool. Schuler also denies that he shoved Buda. Instead, Schuler testified Buda ran toward him, yelling, and wielding a nightstick, cue stick, or baseball bat. Schuler testified that Buda entered the passenger side of Mei's car and hit his leg, between his right knee and ankle, with the stick. Eventually, Schuler got into the backseat of the car and Mei locked the doors. Buda ran away.

Mei's version of events was fairly similar to Schuler's account. However, she claimed that Buda did not enter the car. In addition, Mei claimed that she put the car in gear but stopped once she noticed that Schuler was "half hanging out" of the car.

## C. Buda's Arrest and Criminal Charges

Less than two weeks after the altercation, Buda was questioned by police. The investigating officer noted that "[Buda] stated he doesn't remember having a weapon, but because he was drunk he may have used something and can't recall." Buda claims that the statement reflected the officer's opinions and was not a quote.

On May 13, 2008, Buda entered an *Alford*[2] plea to one count of second-degree assault, which contains the following elements:

(1) A person is guilty of assault in the second degree when:

    (a) He intentionally causes serious physical injury to another person; or

    (b) He intentionally causes physical injury to another person by means of a deadly weapon or dangerous instrument; or

    (c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

KRS 508.020.

Buda claimed that he did not intend to seriously harm Schuler and did not admit to using a weapon. During his sentencing hearing, however, Buda apologized to Schuler, said he did not intend to cause severe injuries but apologized for the serious injuries he inflicted. He never actually admitted that he hit Schuler's leg.

## D. Procedural History of the Civil Case

On July 3, 2008 Schuler filed a complaint in the Campbell Circuit Court claiming that Buda assaulted and battered him, thereby causing serious injury to his right leg. Schuler's complaint sought damages for past medical expenses, future medical expenses, loss of business, lost income, pain and suffering, and punitive damages.

On December 31, 2008, Schuler moved for summary judgment. He argued that Buda admitted liability in both his guilty plea and the apology he gave Schuler at the sentencing hearing. Buda opposed Schuler's motion and claimed that genuine issues of material fact existed. The trial court stated that "Buda has not presented any affirmative evidence opposing Schuler's overwhelming evidence that the injuries he sustained to his leg on the night of the assault were caused by Buda" and granted summary judgment in favor of Schuler.

Following a hearing, held on April 8, 2010, the trial court awarded Schuler damages in the amount of $468,281.14 for medical expenses, lost earnings, past pain and suffering, future pain and suffering, and punitive damages. This appeal follows.

**2.** *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

## II. Summary Judgment

■ When ruling on a party's motion for summary judgment, the trial court must view all evidence in the light most favorable to the non-moving party and resolve all doubts in his favor. *Hallahan v. The Courier–Journal*, 138 S.W.3d 699, 705 (Ky.App.2004). The movant bears the initial burden of showing that no genuine issue of fact exists. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky.1991). Then, the burden shifts to the non-movant to show "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* at 480.

■ When reviewing a summary judgment decision, appellate courts need not defer to the trial court's ruling. *Hallahan*, 138 S.W.3d at 705. As legal conclusions are involved and findings of fact are not at issue, appellate review shall be conducted under a *de novo* standard. *Id.* Appellate courts must only ask "whether the trial court correctly found there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Id.* at 704.

The record contains uncontroverted evidence that Buda caused serious physical injury to Schuler. In their depositions, both Schuler and Mei testified that Buda repeatedly hit Schuler's leg with a stick-like object. The severity of Schuler's injuries was not in question and was easily proved through medical records, police records, pictures, and depositions.

Although Buda denies that he caused Schuler's leg injuries, he admitted that he repeatedly hit Schuler and apologized for causing severe injury. Further, Buda took responsibility· for Schuler's injuries in a letter of apology that he read during his sentencing hearing.

"The inquiry should be whether, from the evidence of record, facts exist which would make it possible for the non-moving party to prevail." *Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724, 730 (Ky.1999). Although Buda tries to create factual questions with a different version of facts, his factual discrepancies are not only unbelievable, they are insignificant in light of his statements on the record taking responsibility for severe injuries inflicted on Schuler and the fact that Schuler's only body part which was severely injured was his leg. The trial court did not err by disregarding Buda's incredible factual claims and by finding an absence of a genuine factual dispute.

## III. Damages

### A. Lost Corporate Compensation

■ Buda claims that the trial court erred by awarding $50,000 to compensate Schuler for his inability to earn income for Family Chiropractic Center, Inc., a for-profit corporation, solely owned by Schuler. While Schuler received his base salary of $5,000 per month during the time he was unable to work as a result of the injuries inflicted upon him by Buda, he claimed that he was additionally entitled to sums which would have been earned had he been able to work during the time he was recuperating.

■ Under Kentucky law, corporations are viewed as separate and distinct legal entities. *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 211 (Ky.App.2009). That said, whether an injured person may recover damages for the loss of time devoted to their own business depends upon the nature of the business loss. As stated in the Restatement (Second) of Torts, § 924, cmt. c:

When the injured person was not receiving a salary, but owned and was operating a business that was deprived of his services by the injury, his damages are the value of his services in the business during the period. If his services, rather than the capital invested or the services of others, were the predominant factor in producing the profits, evidence of the diminution of profits from the business will be received as bearing on his loss of earning capacity.... If, however, the income of the business is chiefly the result of capital invested or the services of others, the damages are determined by the market value of the services that the plaintiff was prevented from giving, that is, the amount commonly paid for the services in businesses of like nature. In this case evidence as to the extent of the business and the nature of his services is admissible, but not evidence as to the amount of profits before and after the loss.

Although Schuler continued to receive some salary, the salary received was a fraction of what the income would have been to the corporation and concomitantly to him. His labor was the sole source of income for his business. Therefore, the trial court correctly concluded that Schuler was entitled to such damages.

■■■■ Buda argues that Schuler failed to prove the amount of his lost profits with reasonable certainty and failed to plead "special damages" in his complaint. Schuler testified that his corporation has net revenues of $15,000 per month. As the finder of fact, the trial court is vested with the responsibility of weighing and evaluating the credibility of witnesses and the reliability of evidence. Kentucky Rules of Civil Procedure (CR) 52.01. An appellate court will not disturb the trial court's findings unless those findings are clearly erroneous and unsupported by substantial evi-

dence. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003). Substantial evidence is evidence that contains "sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (citations omitted). Although Schuler could have presented documentation to support his calculations, the trial court found his testimony to be reliable and sufficient. The court's findings were based upon sufficient evidence.

■■■ Buda also claims that Schuler failed to specifically plead lost profits. However, Schuler's amended complaint stated, "As a result of the assault and battery, the Plaintiff lost income and lost business from his practice." The complaint also advised that Schuler intended to seek damages in the amount of $95,000 in lost profits to his business. Buda had ample notice of Schuler's claims. The trial court did not err in its conclusion.

## B. Punitive Damages

■■■■ Buda argues that the conduct in this case does not rise to the level of conduct required for an award of punitive damages. Punitive damages are appropriate when the defendant exhibited outrageous conduct with reckless disregard for the rights of others. *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382, 389 (Ky.1985).

KRS 411.186 provides, in part:

(1) In any civil action where claims for punitive damages are included, the jury or judge if jury trial has been waived, shall determine concurrently with all other issues presented, whether punitive damages may be assessed.

(2) If the trier of fact determines that punitive damages should be awarded, the trier of fact shall then assess the sum of punitive damages. In determining the amount of punitive damages to be assessed, the trier of fact should consider the following factors:

(a) The likelihood at the relevant time that serious harm would arise from the defendant's misconduct;

(b) The degree of the defendant's awareness of that likelihood;

(c) The profitability of the misconduct to the defendant;

(d) The duration of the misconduct and any concealment of it by the defendant; and

(e) Any actions by the defendant to remedy the misconduct once it became known to the defendant.

The record contains significant evidence indicating that Buda viciously attacked Schuler, severely beating him with an object. This conduct constitutes an egregious display of total disregard for the safety of others. Therefore, the trial court's decision to award punitive damages is supported by the record.

C. Medical Expenses

Finally, Buda claims that Schuler's medical bills were unreasonable because Schu-ler's health insurance contracted with healthcare providers to accept less payment than the full amount billed. Buda claims that this inequity results in a windfall for plaintiffs.

In *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676 (Ky.2005), the Kentucky Supreme Court specifically concluded that a plaintiff may recover the full amount of medical bills even though the health insurance company negotiated to pay less than the full amount.

Accordingly, we affirm the Campbell Circuit Court.

ALL CONCUR.