CLAYTON, CHIEF JUDGE:
Lawrence R. Webster appeals from a summary judgment entered by the Pike Circuit Court in favor of Pfeiffer Engineering Company (P.E.C.). P.E.C. filed suit against Webster for failure to pay the balance of an account for professional expert services incurred in a products liability case. Upon review of the record and applicable case law, we conclude that it was an "account stated," and affirm.
On October 22, 2014, Webster, an attorney, filed a products liability suit against Southwire Tools & Equipment in the U.S. District Court for the Eastern District of Kentucky. His client, Bobby Taylor, was injured on November 1, 2013, when a new digital voltmeter he used while working in a coal mine exploded. The lawsuit alleged that Southwire manufactured the voltmeter and was liable for Taylor's injuries.
On February 6, 2015, Webster hired P.E.C. to provide expert testimony regarding the malfunction of the voltmeter. P.E.C. is solely owned by John C. Pfeiffer, a registered professional electrical engineer. Under the terms of the Expert Witness Retention Contract entered into by Webster and P.E.C., Pfeiffer agreed to perform professional engineering services at the rate of $225 per hour. Pfeiffer expended a total of 108 hours on the case. According to a time report submitted by Pfeiffer, he completed his initial investigation report on April 5, 2015, and submitted the final report to Webster on April 16, 2015. In his brief, Webster states that the initial report only reached him the day before it had to be submitted in compliance with Federal Rules of Civil Procedure (FRCP) 26(a)(2)(B) ; he further states that the final report contained both revisions of the opinions in the initial report and new opinions, neither of which are permitted under the federal rules.
On May 19, 2015, P.E.C. submitted its first invoice to Webster in the amount of $1,968.75. On May 25, 2015, P.E.C. submitted a second invoice for $15,862.50. Webster paid $1,500 towards his balance on August 15, 2015. P.E.C. sent a third invoice on September 5, 2015, in the amount of $6,250 which reflected the $1,500 credit. As of September 5, 2015, the amount owing to P.E.C. was $22,856.25.
Meanwhile, on July 24, 2015, Southwire Tools & Equipment sought summary judgment in the federal lawsuit on the basis that it was not the manufacturer of the voltmeter but merely sold the product on *373 behalf of the actual manufacturer whom it identified as Shenzhen Everbest Machinery Co., Ltd. The one-year statute of limitations period governing products liability claims had run by that time. See Kentucky Revised Statutes (KRS) 413.140(1)(a). According to his time report, Pfeiffer prepared a fourteen-page rebuttal to the summary judgment motion on August 10, 2015.
The Federal District Court granted summary judgment to Southwire on September 11, 2015, ruling that it was protected by Kentucky's "Middleman Statute," KRS 411.340, which served to limit liability for Taylor's injuries to the manufacturer of the allegedly defective multimeter, and did not extend to the distributor. Taylor v. Southwire Tools & Equip. , 130 F.Supp.3d 1017, 1019 (E.D. Ky. 2015).
Webster sought an appeal on behalf of Taylor from this decision in the Federal Court of Appeals for the Sixth Circuit. On November 19, 2015, Southwire paid $5,000 in exchange for Taylor's dismissal of the appeal. On the date the appeal was actually dismissed, December 3, 2015, Webster sent the settlement check to P.E.C. with a letter stating as follows:
Dear John:
Enclosed you will find $5,000.00 which is the total we were able to settle Bobby Taylor's case for. I will try to pay you on a monthly basis as much as I can.
I appreciate your help in this case and your forbearance.
Thank you.
Yours truly,
Lawrence R. Webster
On January 6, P.E.C. submitted an updated invoice reflecting the payment of $5,000 which reduced the total balance due to $17,856.25. Webster did not make any further payments.
Four months later, on April 25, 2016, P.E.C. filed suit against Webster in Pike Circuit Court claiming that Webster breached the Expert Witness Retention Contract and was unjustly enriched by P.E.C.'s services. The complaint sought judgment against Webster in the amount of $17,856.25, pre- and post-judgment interest, and attorney's fees and costs. On October 4, 2017, the circuit court granted summary judgment to P.E.C. This appeal by Webster followed.
In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." Scifres v. Kraft , 916 S.W.2d 779, 781 (Ky. App. 1996) (citing Kentucky Rules of Civil Procedure (CR) 56.03 ). Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." Steelvest, Inc. v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476, 483 (Ky. 1991) (internal quotation marks and citation omitted). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Id. at 480. On the other hand, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." Id. at 482. "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue de novo because only legal questions and no factual findings are involved." Hallahan v. The Courier-Journal , 138 S.W.3d 699, 705 (Ky. App. 2004).
Webster argues that Pfeiffer breached the terms of the contract by not performing his duties in a workmanlike manner *374 and by misrepresenting his qualifications as an expert on multimeters and his capability of testifying about their design and manufacture. He argues that Pfeiffer's opinions would not have met the standard for admissibility of expert testimony set forth in Federal Rules of Evidence (FRE) 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). He also claims that Pfeiffer failed to submit sufficiently detailed invoices and overcharged for secretarial and travel expenses.
Although the trial court did not specify its grounds for granting the summary judgment, P.E.C.'s motion relied primarily on the argument that it was owed payment because of the existence of an "account stated." An "account stated" is
broadly defined as an agreement, based on the prior transactions between the parties to an open account, that the items of the account are true and that the balance struck is due and owing from one party to another. ... In order to establish an account stated, there must be: (1) a previous debtor-creditor relationship between the parties; (2) a showing of mutual assent, between the parties to the account, as to the correct balance; and (3) a promise by one of the parties to pay that balance.
1 Am. Jur. 2d Accounts and Accounting § 24 (2018) (footnotes omitted). The Restatement (Second) of Contracts describes an "account stated" as "a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account ... is a manifestation of assent." Restatement (Second) of Contracts § 282 (1981).
These basic principles are also found in Kentucky's early case law, which states that
"[A]n account rendered shall be deemed an account stated, from the presumed approbation or acquiescence of the parties, unless objections be made thereto within a reasonable time." The rendering of the account is equivalent to a demand of payment. It informs the debtor as to the character and amount of the claim; he may examine it, and, if no objection be made, it then becomes a stated one, and, from that time, a liquidated claim. He then knows that payment is desired, and he then becomes chargeable with delinquency, if he fails to pay.
Henderson Cotton Manuf'g Co. v. Lowell Mach.-Shops , 86 Ky. 668, 7 S.W. 142, 145 (1888) (internal citations omitted). Thus, the doctrine of the stated account applies if there is a running account between the parties, and the debtor, previous to the rendition of the account, acknowledges any indebtedness to the creditor. Little & Hays Inv. Co. v. Pigg , 29 Ky. 809, 96 S.W. 455, 456 (1906).
The uncontradicted evidence shows that Webster made absolutely no challenge to the amount of the account or to Pfeiffer's qualifications until P.E.C. filed suit against him, long after the underlying lawsuit was dismissed. Webster was in possession of Pfeiffer's report in April 2015, paid $1,500 towards his balance on August 15, 2015, and paid yet another $5,000 in December 2015, at which time he acknowledged the account and promised to continue making payments. Webster does not allege that he could not have timely discovered any alleged flaws in Pfeiffer's methodology or shortcomings in his qualifications. Webster's failure to request any additional details about Pfeiffer's work or to object to Pfeiffer's invoices, and his partial payments, along with his promise to pay as much as he could on the balance on a monthly basis, constitute an admission of *375 his liability and conclusively establish an account stated under Kentucky law. The undisputed facts of this case show an "account stated" in which the debtor, Webster, admitted and agreed to the account of the amount due. Harris v. Edward J. Miller & Son, Inc. , 453 S.W.2d 739, 740 (Ky. 1970).
For the foregoing reasons, the summary judgment of the Pike Circuit Court in favor of P.E.C. is affirmed.
ALL CONCUR.