RENDERED: FEBRUARY 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0105-MR


JESSE PALMER                                                          APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE JESSICA E. GREEN, JUDGE
                    ACTION NO. 22-CI-002502


GREGORY A. SHELL                                                      APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, KAREM, AND MOYNAHAN, JUDGES.

KAREM, JUDGE:  In February of 2020, Jesse Palmer ("Palmer" or "Appellant") and his daughter, Tammy Parker ("Parker"), executed a rental agreement for a residential house located in Louisville, Kentucky.  The home was owned by Gregory Shell ("Shell" or "Appellee").  Prior to signing the lease, Parker toured the

home with Shell's agent, Cindy.[1]  During the tour, Parker noted that the handrailing for the steps leading up to the home's front porch was loose.  She expressed concern to Cindy who assured her it would be fixed.  Unfortunately, the railing was never fixed.  On September 3, 2021, Palmer fell off the steps while holding onto the loose railing which snapped and broke.  Subsequently, Palmer filed suit in May of 2022.[2]  Following discovery, which included depositions of both Palmer and Parker, the trial judge granted summary judgment to Shell, dismissing the litigation.  Finding no error, we affirm.

## <u>FACTUAL BACKGROUND</u>

Both parties agree that during Parker's tour of the home, prior to signing the lease, she identified a safety issue with the loose railing.  Her father, who was over 80 years of age at the time, needed the railing for support to walk up and down the steps.  And, prior to the signing of the lease, Parker gave Cindy a list of requested repairs which included the loose railing.  Cindy assured her the railing would be repaired "around April, because if [Shell] does it now, it's just going to mess back up when it warms up."  With this assurance, both Palmer and Parker signed the lease on February 10, 2020.

---

[1] No surname was located in the record for Cindy.

[2] Tammy Parker was not a party to the suit although she also signed the lease.

Although Palmer was not present at the tour of the home prior to signing the lease, he acknowledged at his deposition that he was well aware of the defect with the railing prior to his fall.

Q. All right. How many steps were there?

A. Four or five.

Q. Did you ever have any problems with the handrail or handrails before the - - before your fall?

A. I never would put my weight on the rail because I knew they were loose.

Q. You knew they were loose.

A. Yeah. And my daughter knew and [Shell] knew they were loose. They wasn't even - - the rails was just sitting there. They're steel. They was iron. And they had been there so long that they done rotted out at the bottom. They were just sitting there. So, if you don't put no lot of weight on them, you know what I mean, they would stay there.

Q. All right.

A. But if you shake it like that and try to come down, you couldn't do that.

Q. So, you knew the condition of the railing before your fall.

A. Yeah, that's - - yeah.

Q. Okay. And your daughter did, too.

A. Yeah.

Unfortunately, the repairs were never made to the railing and on September 3, 2021, Palmer fell off the steps and was injured.

On May 19, 2022, Palmer filed suit alleging Shell's negligence had caused him harm. The next day, on May 20, 2022, Palmer filed an amended complaint adding claims under the Uniform Residential Landlord and Tenant Act, Kentucky Revised Statutes 383.500 *et seq.* ("URLTA") and alleging that the failure of Shell's employees to repair the railing imputed additional negligence on Shell via the legal theory of *respondeat superior*. Notably, neither Palmer's original Complaint, nor his Amended Complaint, pled a breach of contract claim.

The process of obtaining discovery proceeded and consisted of exchanged interrogatories and answers thereto, and the taking of both Palmer's and Parker's deposition. Then on April 1, 2024, Shell filed a motion for summary judgment arguing against Palmer's URLTA and common law negligence claims. A hearing was held, and arguments heard by the trial court, on October 28, 2024.[3] Subsequently, on January 2, 2025, the trial judge granted Shell's motion and dismissed all of Palmer's claims. This appeal followed.

---

[3] The Certification of Record of Appeal submitted by the Jefferson Circuit Court Clerk to the Court of Appeals did not include either video or CD/DVD recordings. Neither party filed a designation of the record in accordance with the Kentucky Rules of Appellate Procedure ("RAP") 24(B)(1) and (2) requesting electronic recordings be added to the materials the circuit court clerk automatically included in the record for review.

## STANDARD OF REVIEW

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); Kentucky Rules of Civil Procedure ("CR") 56.03. "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

## ANALYSIS

Palmer, in his brief, affirmatively stated he was not appealing the trial court's ruling as to his alleged URLTA claim. Therefore, the sole question before this Court is whether Palmer, as lessor, has an actionable claim in common law against his landlord, Shell, for the injuries he sustained from falling off the steps due to a defective handrail. However, Palmer not only fails to make any argument to support this claim, but he also acknowledges that he has no claim.

> The Appellant begins by acknowledging that this Court held in *Cantrell v. Conley*, 679 S.W.3d 1, 5 (Ky. App. 2023) that a landlord "is not liable for injuries sustained from a known defective condition." The Appellant further acknowledges that the Commonwealth['s] highest Court's holding in *Waugh v. Parker*, 584 S.W.3d 748, 752 (Ky. 2019) that a "tenant takes the premises as he finds them." Combined, these cases stand for the

-5-

principle that once a lease has been signed, a landlord –
in this case the appellee – is no longer responsible for
injuries from known conditions. As such, the presence of
the lease and the knowledge of a condition typically
serve as a bar to the claims of an injured party.

Confusingly, Palmer maintains that the assurances made by Cindy, Shell's agent, prior to the signing of the lease, that repairs would be made to the handrail, created a duty owed him by Shell. He further contends that, although the rental agreement specifically mandates that no oral agreements will be binding on the parties, Cindy's assurances along with emails from Parker, create a situation where he did not take the premises as he found them. Instead, he argues "this information [is] evidence of a modification that preserved the Appellant's common-law negligence claims." Palmer cites no law to support his arguments, creating confusion as to the legal theory he is invoking. But it is clear to the Court that he is attempting legal gymnastics to transform a breach of contract claim into a common law negligence claim. There is no other logical way to interpret the argument.

CR 8.01 states, a claim "shall contain (a) a short and plain statement of the claim showing that the pleader is entitled to relief, and (b) a demand for judgment for the relief to which he deems himself entitled." The Kentucky Supreme Court has stated, "[i]t is not necessary to state a claim with technical precision under this rule, as long as a complaint gives a defendant fair notice and

identifies the claim." *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (citation omitted). Our review of the Complaint filed herein reveals no mention of a breach of contract claim. Palmer only ever asserted claims under URLTA and common law negligence; therefore, Shell had no notice that Palmer would argue a claim for breach of contract. The trial court appropriately refused to address the argument as do we.[4]

## CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's Judgment.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| J. Tate Meagher | William B. Oberson |
| Christopher Bailey | Ryan D. Nafziger |
| Louisville, Kentucky | Allison Oberson-Wiles |
| | Louisville, Kentucky |

---

[4] The trial court addressed breach of contract in a footnote.

> [Palmer's] response to the instant Motion makes passing references to a supposed "promise" on the part of [Shell] to repair the loose railing prior to the former's move-in date. First and foremost, as the court reads it, the Amended Complaint does not contain a breach-of-contract claim, meaning any such claim is nonactionable and necessarily irrelevant to [the] disposition of [Shell's] motion. Second, even if such a claim were somehow in play, any alleged "promise" by [Shell] would be unenforceable because [it was] not supported by adequate consideration and also because it did not survive the signing of the parties' lease agreement.