Wallace WALES, Sr., Appellant

v.

Ted PULLEN, Individually and in his Capacity as Director of the Louisville Metro Government Department of Public Works; and Richard Storm, Individually and in his Capacity as Jefferson County Engineer, Appellees.

No. 2011–CA–002109–MR.

Court of Appeals of Kentucky.

Dec. 21, 2012.

Lawrence L. Jones, II, Corey Ann Finn, Louisville, KY, for appellant.

Jennifer Swyers, Assistant Jefferson County Attorney, Louisville, KY, for appellees.

Before COMBS, LAMBERT, and NICKELL, Judges.

## OPINION

LAMBERT, Judge:

Wallace Wales Sr. appeals the entry of summary judgment in favor of the appellees, Ted Pullen, individually and in his capacity as Director of the Louisville Metro Government Department of Public Works, and Richard Storm, individually and in his capacity as Jefferson County Engineer. Based on the reasons stated herein, we reverse in part, affirm in part, and remand.

On September 14, 2008, the Louisville, Kentucky, area was hit by a significant windstorm that resulted in downed power

lines and downed trees across the city. On September 20, 2008, Wales was returning home from a night out with friends. As he proceeded down 15th Street, he turned left onto Wilson Avenue. As he drove between 16th Street and Peerless Avenue, he crashed his motorcycle when he hit branches of a tree that were in the middle of the roadway.

Ted Pullen is the Director of Public Works and Assets. This agency consists of nearly 800 employees working in eight divisions. Each division has either an assistant director or a manager who supervises the division and reports directly to Pullen. As director, Pullen supervises his assistants concerning their implementation of the department's goals, budgets and policies, and analyzes data on the effectiveness and efficiency of programs and services to ensure maximum utilization of available resources.

At the time of Wales's accident, Richard Storm was an Assistant Director of Public Works, overseeing the engineering division. He also served as the County Engineer to represent the Louisville Jefferson County Metro community on the Planning Commission. As the Assistant Director over the engineering division, Storm supervised approximately fifty employees who managed the design and construction of all the Public Works capital projects, including bridge replacements, road widening, highway construction and maintenance, traffic signals, mapping and plan review, coordinated utility work, bicycle and pedestrian facilities, and handicap ramps. He also reviewed plans and specifications of highways, streets, subdivisions, drainage, and other construction projects and ensured that proper field inspections were completed during the construction process. Furthermore, Storm assisted Pullen in the operations of the department, which included coordinating new programs, projects, and activities to achieve short and long-range goals and objectives; planning expenditures for budget preparation; and assisting in determining departmental policies and planning long-term programs.

Following the motorcycle accident, Wales filed the instant action against Louisville Gas & Electric ("LG & E"), and Pullen and Storm, in their official and individual capacities, for failure to remove the downed trees or place adequate warnings of the trees on Wilson Avenue. Pullen and Storm filed a joint motion to dismiss, claiming that the allegations against them in their official capacities were barred by the doctrine of sovereign immunity and that the claims against them in their individual capacities should be dismissed because they were entitled to qualified official immunity.

During oral argument, Wales conceded that Pullen and Storm could not be held liable in their official capacities, but argued that Pullen and Storm were only subject to qualified official immunity and could be held liable for negligent performance of their ministerial duties. Initially, the trial court denied the motion as pertaining to Storm, holding that Kentucky Revised Statutes (KRS) 179.070 applied. That statute sets forth the general powers and duties of Storm's position of County Engineer, requiring the engineer to "remove trees and other obstacles from the right-of-way of any publicly dedicated road when the tree or other obstacle becomes a hazard to traffic." The trial court stated:

> The language in the statute sets forth an order from the legislature to remove trees or other obstacles from the right-of-way when they become a hazard to traffic which the county engineer must obey. As such, it appears that Storm's action or omission of removing a downed

tree would be considered ministerial in nature.

Regarding Pullen, the trial court held that "[a]t this point, the record is devoid of any rules, guidelines, or directives which would control the actions of Pullen," but permitted Wales an opportunity to conduct discovery regarding this issue.

During this additional discovery period, Pullen acknowledged the accuracy of the above information about his and Storm's job duties. Additionally, Pullen described that under normal circumstances, the following occurs when a tree is reported down: (1) someone notifies 911 of a downed tree; (2) the MetroSafe dispatcher will call out for Police or Fire *and* Public Works; (3) a Public Works supervisor is dispatched to the scene; (4) if wires are involved, Police or Fire will respond and block off or tape off the site; (5) the utility company will cut up the tree and remove the wires; and (6) a Public Works contractor will be secured if the tree is too big to handle. According to Pullen, this is an unwritten procedure that everyone knows from his or her experience in the Public Works Department.

Following the 2008 windstorm, the Public Works Department, feeling "vastly overwhelmed" by the number of calls, would put incoming calls about downed trees on a list and distributed those lists to the district areas. Pullen's executive assistant, Susan Bagshaw, maintained the list and was responsible for making the assignments.

Regarding his supervision of Storm, Pullen was aware that Kentucky statutory law placed a duty upon the County Engineer to remove trees in the roadway that cause a public safety hazard. However, Pullen never discussed Storm's statutory duty with him and never told him that removing trees was included in his official duties.

Storm claims that he never read KRS 179.070 and that no one ever told him that removing trees was part of his job duties. He indicated that Public Works had a sub-department that handled tree removal, and that he was simply too busy to have that function as one of his job duties, especially given the size of the city. However, he freely admits that there is no "big city" exception to the statute. When asked why he thought the statute did not apply to him, Storm stated that he was simply not aware of the statute—he was never provided a copy of it with his job description. Storm testified that according to the statute, he did have a duty as the County Engineer to remove trees from the roadway that are causing a hazard, and he agreed that a tree blocking the roadway would cause a hazardous situation. He also admitted that he did not remove trees from the roadway during the post-storm cleanup period, and he did not ask anyone to remove any such trees from the roadway during that time.

After Pullen and Storm gave their depositions, they filed motions for summary judgment. Pullen argued that as the head of Public Works, he was only required to supervise his employees and ensure implementation of the department's policies. He claimed that he was not personally responsible for removing trees from roadways or otherwise ensuring that roadways were safe. For his part, Storm denied that as the County Engineer, he was responsible for removing trees and other obstacles from the roadways.

In a memorandum and order entered on October 20, 2011, the trial court granted both Pullen and Storm summary judgment based on their claims of qualified official immunity. With respect to Pullen, the trial court concluded that there was no allegation that Pullen or the employees he directly supervised were charged with the

removal of the tree. The court held that "none of [Pullen's] duties involve obedience to the orders, or the execution of any specific act, such that they are ministerial in nature." Accordingly, Pullen was entitled to qualified official immunity.

With respect to Storm, the trial court overlooked its previous holding that given the language of KRS 179.070, "Storm's action or omission of removing a downed tree would be considered ministerial in nature." Instead, the trial court relied on Storm's own statement that he was never informed of the statute and that he was never told that removing trees was part of his job. Concluding that Storm had no actual authority to direct the removal of storm debris, the trial court held that Storm did not owe Wales any duty and entered summary judgment in his favor.

Wales timely filed his notice of appeal, and this appeal now follows. The standard of review in Kentucky on a motion for summary judgment is well-known. We review the trial court's application of the law to the facts and the appropriate legal standard *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky.App.2001).

While government officials and employees like Pullen and Storm may enjoy immunity in their official capacity, they do not enjoy immunity for negligent performance of ministerial tasks when sued in their individual capacity. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky.2001). When a state officer or employee is sued in his or her individual capacity, he or she is protected only by a qualified official immunity. *Id. See also Autry v. Western Ky. Univ.*, 219 S.W.3d 713, 717 (Ky.2007).

*Yanero* arose out of an injury to a high school student athlete that occurred when he was hit in the head with a baseball in a gymnasium during batting practice. *Id.* at 517. The student was not wearing a batting helmet at the time of his injury. *Id.*

The parents of the student brought suit against, *inter alia*, assistant head coach Allen Davis and assistant coach Jeffrey Becker. *Id.* In determining whether qualified official immunity shielded the coaches from liability, the Kentucky Supreme Court discussed the history and application of sovereign immunity in the Commonwealth, which we find especially helpful in the instant case.

Sovereign immunity is the principle that a sovereign nation is inherently immune from suit unless it has given its consent or waived immunity. *Id.* This immunity extends to legislators in the performance of their legislative functions, judges for their judicial functions, and prosecutors for the performance of the prosecutorial functions. *Id.* at 518. The rationale for this is to protect these offices against "the deterrent effect of a threat of suit alleging improper motives where there has been no more than a mistake or a disagreement on the part of the complaining party with the decision made." *Id.*

However, questions regarding immunity for other governmental positions "are resolved by examining 'the nature of the functions with which a particular official or class of officials has been lawfully entrusted,' and evaluating 'the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.'" *Id.* (Citing *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). Absolute immunity of a government official from suit for monetary damages is justified only when the danger of the official being deflected from the effective performance of his/her public duty is great. 63C Am. Jur.2d, *Public Officers and Employees* § 308 (1997).

Qualified immunity affords protection from damages for liability "for good faith judgment calls made in a legally uncertain environment." *Yanero*, at 522 (internal citation omitted). It applies to negligence only where 1) the acts or functions are discretionary; 2) the acts were taken in good faith; and 3) the acts are within the scope of the employee or the officer's authority. *Id.* However, government employees are not afforded qualified immunity for any ministerial act or any discretionary act performed in bad faith.

The decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as: 1) the nature of the official's duties; 2) the extent to which the acts involve policymaking or the exercise of professional expertise and judgment; and 3) the likely consequences of withholding immunity. *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 809 n. 9 (Ky.2009). "An act is not 'discretionary' merely because some judgment is used in deciding on the means or method used." *Id.* at 808.

Wales argues that the trial court erred when it disregarded the clear mandate of KRS 179.070(j) stating that county engineers will remove trees from roadways and held that Storm had no actual authority in his position to remove the trees at issue in this case. KRS 179.070 states:

(1) The county engineer shall:

. . . .

(b) See that county roads and bridges are improved and maintained as provided by law;

(c) Supervise the construction and maintenance of county roads and bridges and other work of like nature undertaken by the fiscal court or a consolidated local government;

. . . .

(j) Remove trees or other obstacles from the right-of-way of any publicly dedicated road when the tree or other obstacles become a hazard to traffic. . . .

Given the clear statutory mandate to remove trees, Storm, as the County Engineer, had the duty and authority to remove a downed tree. The trial court's holding that Storm did not have the actual authority to remove such a tree was in error. While the Jefferson County Metro Public Works Department may have chosen to structure its department differently, based on the statutes as written, a member of the public, such as Wales, would expect the County Engineer to remove trees, as evidenced by the clear statutory mandate and power to do so. We agree that the statutory language and use of the word "shall" indicates that Storm's duty was not discretionary, and was in fact ministerial. Therefore, he is liable for any negligence in failing to remove the trees or in improperly removing the trees.

The trial court's reliance on Storm's statements that he was never informed of this statutory duty was in error. This Court does not believe this is an adequate defense for a public official or employee seeking the protection of sovereign immunity. There is no notice requirement in sovereign immunity law or any safe harbor for a government employee who does not know the duties of his or her job.

[W]here the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, the officer will be liable to such individual for any injury which he may proximately sustain **in consequence of the failure or neglect of the officer either to perform the duty at all, or to perform it prop-**

**erly.** In such a case the officer is liable as well for nonfeasance as for misfeasance or malfeasance.

*Cottongim v. Stewart,* 283 Ky. 615, 142 S.W.2d 171, 177 (1940) (emphasis added). We agree with Wales that when officials are not held to their statutory responsibilities, it creates a situation like the one in this case in which the trial court was forced to conclude that despite the provision of KRS 179.070 placing the responsibility of tree removal on the County Engineer, the Louisville Metro government has placed that responsibility on the Operations Department of Public Works.

Accordingly, we reverse and remand the trial court's holding that Storm was entitled to qualified official immunity because he was not aware of his statutory duty to remove trees as the County Engineer.

■ With respect to Pullen, we agree with the trial court's holding that he was entitled to qualified official immunity. As the director of public works, Pullen presided over a department with eight divisions and nearly 800 employees. As Director, Pullen testified that he was responsible for the direction of the department as a whole and that he ensured the implementation of Public Works' goals, budgets, and policies. He was also responsible for analyzing data on the effectiveness and efficiency of the programs and ensuring maximum utilization of available resources. We agree with the trial court that none of these duties involve obedience to the orders of others or the execution of any specific act, such that they are ministerial in nature. Thus, Pullen's duties were discretionary in nature under *Yanero.* Accordingly, Pullen was entitled to qualified immunity, and the burden shifted to Wales to establish that Pullen somehow acted in bad faith.

■ There is simply no evidence in the record to indicate that Pullen acted in bad faith with respect to any of his duties. The record is devoid of any evidence that Pullen acted in an objectively unreasonable way in carrying out his duties during the period of time following the 2008 windstorm, or that he employed persons of unsuitable skill to carry out the duties of the Department. There is no evidence that Pullen willfully or maliciously intended to harm Wales or acted with a corrupt motive. Thus, Wales did not meet his burden, and Pullen is entitled to qualified immunity. We affirm the trial court's holding in this regard.

Based on the foregoing, we reverse the trial court's order granting summary judgment to Storm and remand this matter for proceedings consistent with this opinion. Whether Storm acted negligently by failing to perform a ministerial duty is an issue for the jury to determine. However, we agree that Pullen's duties were discretionary, and, therefore, that he was entitled to qualified immunity. Therefore, we affirm the trial court's order of summary judgment with regard to Pullen.

ALL CONCUR.