RENDERED: DECEMBER 14, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000457-DG

RICHARD STORM                                         APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                  CASE NO. 2015-CA-000762
JEFFERSON CIRCUIT COURT NO. 09-CI-006073

LOUIS MARTIN                                       APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING IN PART, REVERSING IN PART</u>**

Richard Storm appeals the Court of Appeals' opinion reversing the unanimous jury verdict in his favor on a personal injury action brought by Louis Martin. For the reasons stated herein, we affirm in part and reverse in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND.

On September 14, 2008, a significant windstorm resulted in downed power lines and trees across the Louisville area. Three days later, Martin was driving his motorcycle on Phillips Lane in Louisville when he collided with a downed tree in the roadway. Martin suffered significant injuries as a result of the accident. At the time, Appellee, Richard Storm, was the Metro Louisville

County Engineer and an Assistant Director of Public Works. He reported directly to Ted Pullen, the Director of Public Works.

On June 17, 2009, Martin filed an action in the Jefferson Circuit Court against Pullen, in his individual and official capacities, as well as Louisville Gas and Electric Company, alleging negligence due to defendants' failure to remove the tree on Phillips Lane or to warn motorists of the hazard. Subsequently, Martin amended his complaint to name Storm, also in his individual and official capacities. Recognizing that both Pullen and Storm were entitled to governmental immunity in their official capacities, Martin filed a second amended complaint in January 2010, naming them both in their individual capacities only.

Following discovery, Pullen and Storm filed a joint motion for summary judgment on grounds that they were entitled to qualified official immunity in their individual capacities. By order entered January 31, 2012, the trial court held that Pullen was entitled to qualified immunity and dismissed the claims against him. However, it denied the motion with respect to Storm.

Storm thereafter filed an interlocutory appeal on the issue of immunity. A panel of the Court of Appeals noted that KRS[1] 179.070, which sets forth the powers and duties of a county engineer, specifically states that "(1) [t]he county engineer shall: . . . (j) Remove trees or other obstacles from the right-of-way of any publically dedicated road when the tree or other obstacles

---

[1] Kentucky Revised Statutes.

2

become a hazard to traffic[.]" Rejecting Storm's argument that he was not aware of the statute and that the operations and maintenance division of the Department of Public Works was the entity responsible for tree removal, the panel cited to the recent decision in *Wales v. Pullen*, 390 S.W.3d 160 (Ky. App. 2012) (a contemporaneous case against Storm involving a motorist injured by a downed tree in the same windstorm following Hurricane Ike):

> During the pendency of this appeal, this Court rendered its decision in *Wales v. Pullen*, 390 S.W.3d 160 (Ky. App. 2012), where a motorcyclist was injured when a downed tree allegedly caused him to crash on September 20, 2008, in Louisville. The motorcyclist filed an action against Storm in his individual capacity and, as here, Storm asserted qualified official immunity and argued that he was not responsible for removing trees from the roadways. This Court rejected his contention and held despite that the Louisville Metro Government Department of Public Works may have chosen to structure its department differently, "based on the statutes as written, a member of the public ... would expect the county engineer to remove trees, as evidenced by the clear statutory mandate and power to do so." *Id.* at 166. Storm's ignorance of his statutory duty was inconsequential. *Id.* at 167. The statutory language and the use of the word "shall" rendered his duty ministerial and, therefore, this Court held he was liable for any negligence in failing to remove the trees or improperly removing the trees. *Id.*
>
> We are compelled to reach the same conclusion in this case. Storm's compliance with his statutory duties involved "merely execution of a specific act arising from fixed and designated facts." *Yanero*, 65 S.W.3d at 522. He either complied with KRS 179.070, or he did not. The circuit court properly ruled that Storm owed a duty to Martin, and that duty was ministerial.

3

*Storm v. Martin*, 2012-CA-000378, 2013 WL 4036466 at *2 (Ky. App. Aug. 9, 2013). Accordingly, the Court of Appeals ruled that Storm was not entitled to qualified immunity.

An eight-day trial was subsequently held in March 2015. Storm testified that as county engineer, he and his staff were a division of the larger Department of Public Works, had never been responsible for the removal of trees, and that such task had always been performed by the operations and maintenance division. Storm conceded that he was unaware of KRS 179.070, and that he had never been told that tree removal was part of his job responsibilities. In fact, Storm commented that his division did not even have the equipment to undertake tree removal. Similarly, Greg Hicks, the Assistant Director in charge of the operations and maintenance division of Public Works, testified that it had always been his division's responsibility to remove trees from the roadway.

At the close of all evidence, Martin moved for a directed verdict, arguing that Storm admitted that he was unaware of his statutory obligation under KRS 179.070(1)(j), and that he took no part in removing the tree from Phillips Lane before or after Martin's accident. The trial court denied the motion. The jury returned a unanimous verdict in favor of Storm, finding that Martin had not proven by "a preponderance of the evidence that Richard Storm failed to comply with his duty as set forth in the instruction."

Martin thereafter filed a motion for JNOV/new trial arguing that despite the fact that Storm's testimony conclusively established that he failed to

4

comply with KRS 179.070(1)(j), the jury nonetheless found that he did not breach any duty owed to Martin. Martin pointed out that the jury's question to the trial court during deliberations indicated that it was less concerned with Storm's duty and more concerned with his capacity to withstand the financial impact of a judgment against him. By order entered April 30, 2015, the trial court denied Martin's motion without a hearing and without any written findings. Martin appealed.

The Court of Appeals reversed, and remanded for a new trial, holding that the jury's findings that Storm did not fail to comply with his duty was against the weight of the evidence, and in so finding that he did not exercise ordinary care, overlooked the specific statutory duty. The Court of Appeals held that Martin was entitled to a new trial, but not entitled to a directed verdict. Storm's appeal follows; this Court granted discretionary review and heard oral arguments.

## II. ANALYSIS.

Storm argues that Martin abandoned, and therefore waived, any challenge to Storm's duty instruction. "The question to be considered on an appeal of an allegedly erroneous instruction is whether the instruction misstated the law. It is within a trial court's discretion to deny a requested instruction, and its decision will not be reversed absent an abuse of that discretion." *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky. 2005) (internal quotations and citations omitted).

Martin proposed the following jury instructions, in relevant part:

5

It was the duty of the Defendant Richard Storm as the County Engineer in Jefferson County to comply with KRS 179.070(1)(j), which requires county engineers to **"[r]emove trees or any other obstacles from the right-of-way of any publicly dedicated road when the tree or other obstacles become a hazard to traffic."**

If you are satisfied from the evidence that Defendant, Richard Storm, failed to comply with his legal duties as County Engineer to remove the tree from Phillips Lane, or to warn motorists about the hazard posed by the tree, and that Storm's failure was a substantial factor in causing Louis Martin's injuries, you will find for Plaintiff; otherwise, you will find for Defendant.

(emphasis added). The final jury instructions, in relevant part, stated:

(1) It was the duty of Defendant Richard Strom to exercise ordinary care, **including the specific duty to remove trees or other obstacles from the right-of-way of any publicly dedicated road when the tree or other obstacles become a hazard to traffic** in conducting his business as the Louisville/Jefferson County Metro County Engineer. "Ordinary Care" means such care as a jury would expect an ordinary prudent person engaged in the same type of business to exercise under similar circumstances.

(emphasis added). On the "Jury Verdict Form," the jury answered unanimously "No" to: "Are you satisfied that Plaintiff has proven by a preponderance of the evidence that Richard Storm failed to comply with his duty as set forth in the instructions?"[2] The emphasized portion of the final jury instructions and KRS 179.070(1)(j) are identical, and also nearly identical

---

[2] The jury also found that Louisville Gas and Electric Company did not breach its duty to "exercise ordinary care in conducting its business" by a vote of 10-2.

6

to the instructions initially proposed by Martin, which differs only in the direct citation to this statute.

Although Martin did not allege erroneous jury instructions on appeal, the Court of Appeals saw fit to opine that "[w]e are of the opinion that the instruction setting forth Storm's duty likely contributed to the jury's erroneous verdict. . . . We believe the wording of the instruction herein is subject to a misinterpretation that Storm was only required to use ordinary care in complying with his statutory duty." The Court of Appeals emphasized that, pursuant to *Henson v. Klein*, 319 S.W.3d 413, 421 (Ky. 2010), "[w]hen a statutory duty is supported by evidence, it must be incorporated into a jury instruction as a 'specific duty.'" *Henson* further stated that:

> Moreover, when a statutory duty is applicable, the jury instructions should, after explaining the general duty, specify that it "includes" certain enumerated specific duties because the breach of a duty imposed by statute or ordinance is negligence per se if the harm which occurred incident to violation of the statute is that type of harm which the statute was intended to prevent.

*Id.* Martin and the Court of Appeals are correct that the jury instructions should have contained the "specific" duty language, and indeed, the final instructions enumerated specific duties as required by *Henson.*

CR[3] 51(3) provides:

> No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection

---

[3] Kentucky Rules of Civil Procedure.

before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.

As this Court has held:

The underlying purpose of CR 51(3) is to obtain the best possible trial at the trial court level by giving the trial judge an opportunity to correct any errors before instructing the jury. Generally speaking, if a party's offered instructions clearly present the party's position, no further action is required to preserve for appellate review an allegation that the trial court erred by failing to give a requested instruction. On a number of occasions, however, in both civil and criminal cases, Kentucky appellate courts have explained that a tendered instruction will not fairly and adequately present the party's position as to an allegation of instructional error when: (1) the omitted language or instruction was not contained in the instruction tendered to the trial court; i.e., when the allegation of error was not presented to the trial court *at all;* (2) the minor differences between the language of the tendered instruction and the instruction given by the trial court would not call the trial court's attention to the alleged error; or (3) the tendered instruction itself was otherwise erroneous or incomplete.

*Sand Hill Energy, Inc. v. Smith,* 142 S.W.3d 153, 162–64 (Ky. 2004) (internal quotations and citations omitted). Martin got nearly the exact jury instruction he proposed, and did not object to the instruction in the trial court. Martin cannot now make the unpreserved argument that error occurred in these instructions. These jury instructions did not misstate the duties required of Storm and the trial court did not abuse its discretion in giving these instructions.

Regarding the Court of Appeals remand for a new trial,

8

> When reviewing a trial court's denial of JNOV, we are to affirm unless there is a *complete absence of proof on* a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ. Likewise, the trial court is vested with a broad discretion in granting or refusing a new trial, and this Court will not interfere unless it appears that there has been an abuse of discretion.

*Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 111 (Ky. 2012) (internal quotations and citations omitted). The Court of Appeals determined that the jury's verdict was "erroneous" and "not based on evidence" because KRS 179.070(1)(j) created an "absolute" and non-delegable duty. The Court of Appeals reasoned that since Storm was the county engineer and the tree was not removed, Storm breached that absolute duty, thus the jury should have reached proximate cause.

However, the Court of Appeals seems to confuse the issue of statutory compliance and strict liability. As this Court has stated, the statutory use of "shall" does not automatically render a provision mandatory:

> In order to determine whether strict compliance or substantial compliance is sufficient to satisfy a statutory provision, it first must be determined whether the applicable provision is mandatory or directory. This determination is vital because a proceeding not following a mandatory provision of a statute is rendered illegal and void, while an omission to observe or failure to conform to a directory provision is not. In considering whether the provision is mandatory or directory, we depend not on form, but on the legislative intent, which is to be ascertained by interpretation from consideration of the entire act, its nature and object, and the consequence of construction one way or the other. In other words, if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the

9

> case, then the statute is to be regarded as directory merely.

*Knox Cnty. v. Hammons*, 129 S.W.3d 839, 842–43 (Ky. 2004) (internal quotations and citations omitted). "[T]he use of the word 'shall' with reference to some requirements ... is usually indicative that it is mandatory, but it will not be so regarded if the legislative intention appears otherwise." *Id.* at 843 (quoting *Skaggs v. Fyffe*, 266 Ky. 337, 98 S.W.2d 884, 886 (1936)).

Clearly the intent behind KRS 179.070(1)(j) is to ensure that trees or other obstacles do not block a public roadway. To effectuate this goal, the statute requires that, when such obstacles become hazardous, they are removed. KRS 179.070(1)(j) does not mandate that this duty is non-delegable, nor does it provide guidance for how the county engineer is to actually effectuate the removal of hazardous trees or other obstacles from a roadway. Obviously, the statute does not contemplate personal strict compliance on the part of the county engineer as the sole means to accomplish this, particularly so close in time to a severe weather event when a huge number of trees have fallen. Especially under the facts of this case, delegation of tree removal to other agencies or persons could accomplish the intent of the statute, and therefore, the statute is directory and substantial compliance may satisfy its provisions. *See Hammons*, 129 S.W.3d at 843.

This duty is ministerial, meaning that Storm is not entitled to immunity, but that does not dictate the duty is absolute. "Whether Storm acted negligently by failing to perform a ministerial duty is an issue for the jury to

10

determine." *Wales*, 390 S.W.3d at 167.  The jury heard extensive testimony, including from Pullen, the Director of Public Works, and Hicks, an Assistant Director of Public Works, that the long-standing practice of Jefferson County was that the Operations and Maintenance Division was responsible for tree removal and that Pullen had assigned the duty of tree removal to Hicks.[4] After hearing this testimony, and being instructed on the specific duties required of the county engineer, the jury unanimously found that Storm had not breached his duty.  The jury did not need to reach proximate cause.

The Court of Appeals erred in granting a new trial because ample evidence on the issue of duty was presented and supported the jury verdict. Although we are sympathetic to Martin that further relief is not available, we have entrusted juries with the duty to determine fault, and we are hesitant to invade the province of a properly instructed jury.[5]

---

[4] The jury also heard testimony from Hicks that his job was to remove trees from the roadway and that "the buck stopped" with him.  Hamilton, the Director of Louisville Metro's Emergency Management Agency, described the coordinated federal, state, and county cleanup effort following this emergency weather event and that the public had been warned on both the radio and television about the presence of downed trees and wires.  Hamilton further noted that on the day of Martin's accident, only three days after the storm, 23 streets were confirmed to still be blocked by trees or utility wires.

[5] We are not concerned that this opinion creates a scenario in which no county engineer may be found liable for a breach of this ministerial, directory duty.  If the jury had found that Storm did not comply with his specific duties, the jury would proceed to determine proximate cause and any damages.

### III. CONCLUSION.

For the reasons set forth above, we reverse the opinion of the Court of Appeals remanding to Jefferson Circuit Court for a new trial, and affirm the Court of Appeals denial of a directed verdict.

All sitting. Minton, C.J., Hughes, VanMeter, Wright, JJ., concur. Venters, J., dissents by separate opinion in which Cunningham and Keller, JJ., joins.

VENTERS, J., DISSENTING: Whether he knew it or not, and whether we like it or not, Richard Storm, as the County Engineer for Louisville/Jefferson County Metro, had a statutory duty pursuant to KRS 179.070(1)(j) to exercise ordinary care for the removal of trees and other hazardous debris from the streets in Jefferson County and he did absolutely nothing to comply with that duty. Of course, his duty does not require that he personally wield the chainsaws after each storm. He could perform his statutory duty by managing and overseeing the work of other employees or contractors undertaking the task. But he did not do that either.

Even if he had knowingly acquiesced in an arrangement for surrogates to do the job, he would still be liable for negligent performance of the duty. "[O]ne charged with a statutory duty 'cannot escape from the responsibility attaching on him of seeing that duty performed by delegating it to the contractor, and cannot relieve himself from liability to any person injured by a failure to perform it.'" *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 876 (Ky. 2016) (quoting *Brown Hotel Co. v. Sizemore*, 197 S.W.2d 911, 913 (Ky. 1946)).

12

Here, the trial court knew with mathematical certainty that Storm failed to comply with his statutory duty because he admitted that he had done nothing to ameliorate the hazard of fallen trees and he was completely unaware of the law requiring him to do so. There is a complete absence of any proof to the contrary. Storm's breach of duty is established as Aristotelian truth; it cannot be rationally denied. Storm manifestly failed to perform his duty and so, a directed verdict on that factual issue was absolutely compelled by the evidence.

We have said on countless occasions that a directed verdict is required when there has been a complete absence of proof on a material issue; when there is no disputed fact upon which reasonable minds could differ. *See e.g. Fleming v. EQT Gathering, LLC*, 509 S.W.3d 18, 21 (Ky. 2017). A directed verdict on the undisputed issue, or subsequently a judgment n.o.v., must be granted "when (1) there is a complete absence of pleading or proof on an issue or issues material to the cause of action or defense, or (2) there are no controverted issues of fact upon which reasonable men could differ." *Sutton v. Combs*, 419 S.W.2d 775, 777 (Ky. 1967). The failure of the trial court to direct a verdict on the factual issue of breach, or subsequently to grant j.n.o.v., was clear error. Correspondingly, the jury's verdict on that issue was utterly without evidentiary support and, since it was left uncorrected by the trial court, must be corrected on appeal.

Just as the Court of Appeals did here, this Court and our predecessor court have steadfastly held that a jury verdict which is "palpably or flagrantly

13

against the evidence so as to indicate that it was reached as a result of passion or prejudice" cannot stand. *Indiana Insurance Company v. Demetre*, 527 S.W.3d 12 (Ky. 2017) (quoting *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459, 461-62 (Ky. 1990) and *NCAA v. Hornung*, 754 S.W.2d 855, 860 (Ky. 1988)); *see Nissan Motor Company, Ltd. v. Maddox*, 486 S.W.3d 838, 840 (Ky. 2016) ("[T]he jury verdict awarding punitive damages was palpable and flagrantly against the evidence" and was, therefore, reversed.).

Storm failed to comply with his statutory duty. Fidelity to the foregoing principles compels us to set aside the jury verdict as flagrantly against the evidence. That does not mean that Storm is liable for Martin's injury. The breach of the duty is merely the first stage of tort analysis as clearly laid out by the trial court's jury instructions. Liability arises *only* if Storm's breach of duty proximately caused Martin's injury. It is entirely possible and perhaps even likely, that Storm's duty did not go unattended because someone else, another department of Metro government, competently performed it. In that case, Storm's failure to comply with his duty did not cause Martin's injury. It is also possible that Martin caused his own injury. But regardless of these possibilities, the trial court was obligated to direct the jury past the interrogatory instruction regarding the breach of duty, and require instead that it address the truly disputed factual issue: whether Storm's undeniable failure to exercise ordinary care caused any injury. We should be remanding for a resolution of that factual issue instead of sustaining the fiction that Storm performed his duty despite absolute proof to the contrary.

14

The real mischief lurking within our tolerance of this false verdict is that, in future situations in which the clearing of dangerous storm debris has been performed negligently or neglected altogether, no one can be held to account. For example, if crews sent to clear dangerous debris sat in their trucks and did nothing, they avoid liability by correctly pointing to the statute and reminding us that the legislature put that duty on the county engineer, not on them. And despite the statute, the county engineer, as did Storm in this case, avoids liability by saying, "It's not my job to do that; we don't go by the statute here, we do things our own way." The Court of Appeals correctly remanded this case for a new trial. I therefore dissent.

Cunningham and Keller, JJ., join.

COUNSEL FOR APPELLANT:

Michael J. O'Connell
Jefferson County Attorney

Gregory Scott Gowen
Paul Guagliardo
Assistant Jefferson County Attorney

COUNSEL FOR APPELLEE:

Alexander Davis
Lawrence Lee Jones II
Ashton Smith
JONES WARD PLC