RENDERED: SEPTEMBER 17, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0328-MR

NORTON HEALTHCARE, INC.                                              APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE ANNIE O'CONNELL, JUDGE
ACTION NO. 11-CI-006125


JOYCE TURNER                                                          APPELLEE

AND


NO. 2019-CA-0569-MR

JOYCE TURNER                                                    CROSS-APPELLANT


CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE ANNIE O'CONNELL, JUDGE
ACTION NO. 11-CI-006125


NORTON HEALTHCARE, INC.                                        CROSS-APPELLEE

OPINION<br>REVERSING

** ** ** ** **

BEFORE:  LAMBERT, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE:  This is a disability discrimination case filed under the Kentucky Civil Rights Act (KCRA), where a Jefferson Circuit Court jury found in favor of Appellee, Joyce Turner (Turner).  The jury awarded Turner $91,139.59 in back pay and $1,000,000.00 for embarrassment, humiliation, and emotional distress.  Appellant, Norton Healthcare Inc. (Norton), appealed and Turner cross-appealed.  Norton raises a legal issue concerning Turner's alleged disability, alleges that her evidence at trial was insufficient to establish liability, and, in the alternative, that the emotional damages award was excessive.  Norton requests that we reverse the judgment.  For the following reasons, we agree.

## FACTUAL AND PROCEDURAL BACKGROUND

Turner began working as a registered nurse for Norton on December 16, 2001.  She was diagnosed with breast cancer on June 24, 2009.  On July 2, 2009, Turner's tumor and several lymph nodes were surgically removed.  She was able to return to work soon thereafter with no restrictions and continued to treat her symptoms using chemotherapy from July 2009 through December 2009.  Turner took a period of paid medical leave between October 2009 and December 2009.  She returned to work in January of 2010 with no medical restrictions.

On January 27, 2010, Turner met with her supervisors Cindy Carr, Donna Watkins, and employee relations manager, Nicole Yadon, to discuss Turner's alleged failure to follow required protocols concerning medication charting and dispensing that occurred on multiple instances. Turner was placed on administrative leave as a result. Ultimately, on February 1, 2010, Norton terminated Turner's employment. Turner filed suit in Jefferson Circuit Court on September 19, 2011, asserting three separate causes of action: (1) discrimination on the basis of her disability or perceived disability in violation of the KCRA, KRS[1] 344.040 *et seq.*; (2) discrimination on the basis of age in violation of the KCRA; and (3) a claim for punitive damages and intentional infliction of emotional distress (IIED).

On December 20, 2011, the trial court dismissed Turner's third cause of action for punitive damages and IIED. The only issue before this Court concerns Turner's disability discrimination claim, wherein she specifically complained that she was fired because of her cancer. Norton denies this allegation, instead contending that Turner's employment was terminated due to her failure to properly perform her work duties. Norton specifically asserts that Turner committed serious medication charting and administration errors and therefore endangered patients. Norton subsequently filed a motion for summary judgment

---

[1] Kentucky Revised Statutes.

arguing, *inter alia*, that Turner did not have a qualifying disability under the KCRA and that Norton was entitled to a judgment as a matter of law. The motion was denied and the case proceeded to trial.

After the close of Turner's proof, Norton requested a directed verdict, which was denied by the trial court. On June 15, 2018, a Jefferson Circuit Court jury found in favor of Turner. As previously stated, the jury awarded Turner $91,139.59 in back pay and $1,000,000.00 for embarrassment, humiliation, and emotional distress. In a subsequent order, the court reduced the back pay award by $6,600.00, which represents the sum Turner received from unemployment insurance after her employment with Norton was terminated. Norton then filed a motion for a judgment notwithstanding the verdict (JNOV),[2] motion for a new trial, and a motion to alter, amend, or vacate the judgment under CR[3] 59.05, which were denied by the trial court. Norton appealed to this Court as a matter of right contesting those post-trial orders[4] as well as the underlying judgment entered on September 12, 2018. Turner cross-appealed. Oral argument was granted and the parties were permitted to file supplemental briefing. Having carefully considered

---

[2] CR 50.02.

[3] Kentucky Rules of Civil Procedure.

[4] An order denying CR 59.05 relief is not in itself a final and appealable order. *Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99 (Ky. App. 2011).

the law and the record, we reverse the trial court's denial of Norton's JNOV

motion.

## STANDARDS OF REVIEW

We review a trial court's ruling on a JNOV for clear error. *Peters v.*

*Wooten*, 297 S.W.3d 55, 65 (Ky. App. 2009). "[W]e are to affirm unless there is a

*complete absence of proof on* a material issue in the action, or if no disputed issue

of fact exists upon which reasonable men could differ." *Storm v. Martin*, 540

S.W.3d 795, 800 (Ky. 2017) (citation omitted).[5] Furthermore, "[t]he trial court is

vested with a broad discretion in granting or refusing a new trial, and [appellate

courts] will not interfere unless it appears that there has been an abuse of

discretion." *Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 111 (Ky. 2012)

(citations omitted).

## ANALYSIS

Norton specifically raises the following arguments: 1) the undisputed

evidence demonstrates Turner did not have a qualifying "disability" under the

KCRA; 2) there was no evidence that the decision to terminate Turner's

---

[5] Norton's claim that Turner lacked a qualifying disability was raised in its motions for summary judgment, a directed verdict, and JNOV. Norton properly appeals from denial of the latter. "[O]nce the trial begins, the underlying purpose of the summary judgment expires and all matters of fact and law procedurally merge into the trial phase, subject to in-trial motions for directed verdict or dismissal and post-judgment motions for new trial and/or judgment notwithstanding the verdict." *Transportation Cabinet, Bureau of Highways, Commonwealth of Kentucky v. Leneave*, 751 S.W.2d 36, 38 (Ky. App. 1988). *See also Ortiz v. Jordan*, 562 U.S. 180, 183-84, 131 S. Ct. 884, 888-89, 178 L. Ed. 2d 703 (2011).

employment was substantially motivated by a disability; and 3) the court should vacate the excessive emotional damages award. Turner's cross-appeal argues that "by offsetting Turner's back pay award by her unemployment benefits, the circuit court deprived her of a statutory entitlement, and granted Norton a windfall on liability." The first issue is dispositive here. However, it is first necessary to address the underlying statutory and other relevant legal authority.

## A.    The KCRA

"Given similar language and the stated purpose of KRS Chapter 344 to embody the federal civil rights statutes, including the Americans with Disabilities Act (ADA), this court may look to federal case law in interpreting the Kentucky Civil Rights Act with respect to [a] claim of disability discrimination under KRS 344.040." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705-06 (Ky. App. 2004).

In *Hallahan* a panel of this Court summarized what is necessary for a plaintiff to demonstrate a prima facie case of disability discrimination under the KCRA:

> Under KRS 344.040(1), it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because the person is a "qualified individual with a disability." The plaintiff bears the initial burden of establishing a prima facie case of disability

discrimination against the defendant. In order to establish a prima facie case of discrimination based on a disability, the plaintiff must show: (1) that he had a disability as that term is used under the statute (i.e., the Kentucky Civil Rights Act in this case); (2) that he was "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment decision because of the disability.

Under KRS 344.010(4), a "disability" is defined as:

(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual;

(b) A record of such an impairment; or

(c) Being regarded as having such an impairment.

*Id.* at 706-07 (citations and footnotes omitted).

Under the KCRA, major life activities include, "among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) (citations and footnotes omitted). "Whether the plaintiff has an impairment and whether the conduct affected by the impairment is a major life activity under the statute are legal questions." *Hallahan*, 138 S.W.3d at 707 (citation omitted). However, "[t]he ultimate determination of whether the impairment substantially limits the major life activity generally is a factual issue for the jury, but it may be resolved upon summary judgment under the appropriate

-7-

circumstances." *Id.* (citing *Doebele v. Sprint/United Management Co.*, 342 F.3d 117, 1130 n.5 (10th Cir. 2003)).

**B.      Application of the ADA and Its Amendments**

The primary issue before this Court is whether, as a matter of law, Turner's cancer constitutes a qualifying disability under the KCRA.  The definition of disability provided in KRS 344.010(4) is identical to the original version of the ADA under 42 U.S.C.[6] § 12102(2).  In 2008, Congress amended the ADA to provide a much more robust definition of disability.  However, the KCRA has *not* been amended to reflect these changes.  Nevertheless, Turner primarily contends that we should interpret the relevant provisions of the KCRA in tandem with the 2008 amendments to the ADA.  A comparison of the original provision, 42 U.S.C. § 12102, and its amended version is instructive.  The former provides in relevant part as follows:

> (2) DISABILITY. – The term "disability" means, with respect to an individual –
>
> > (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> >
> > (B) a record of such an impairment; or
> >
> > (C) being regarded as having such an impairment.

---

[6] United States Code.

42 U.S.C. § 12102(2) (1990), *amended by* 42 U.S.C. § 12102 (2008).  By contrast,

the amended version provides in relevant part:

> (1) Disability
>
> The term "disability" means, with respect to an individual –
>
>> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>>
>> (B) a record of such an impairment; or
>>
>> (C) being regarded as having such an impairment (as described in paragraph (3)).
>
> (2) Major life activities
>
>> (A) In general
>>
>>> For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.
>>
>> (B) Major bodily functions
>>
>>> For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, **normal cell growth**, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102 (1)-(2) (amending 42 U.S.C. § 12102 (1990)) (emphasis added). The amended version of the ADA is commonly referred to as the Americans with Disabilities Act Amendments Act (ADAAA). The amended statute provides a broad definition of "major life activities." The original version did not define that term. The amended provision also creates an entirely new category – "Major bodily functions" – and then construes those bodily functions as constituting "major life activities" for purposes of paragraph (1). Accordingly, the amended version provides a more expansive definition of what constitutes "major life activities."

However, "normal cell growth" appears only in the ADAAA definition of what constitutes a qualifying disability. *See* 42 U.S.C. § 12102(2)(B) (2008). The pre-amendment version does not contain that provision. As stated, the KCRA mirrors the pre-amendment version articulated under 42 U.S.C. § 12102(2) (1990) and, therefore, does not expressly recognize "normal cell growth" as a major life activity, the substantial limitation of which would constitute a qualifying disability under Kentucky law.

Critically, the evidence cited by Turner at trial and in her argument on appeal concerning this issue omits any specific evidence of a qualifying disability under the KCRA. One need not be an oncologist to see the merit in Turner's position that cancer limits normal cell growth. Nevertheless, the question before

this Court is an issue of law, not medicine. Neither the plain language of the KCRA nor its accompanying case law has embraced "normal cell growth" as a major life activity. Turner concedes that a panel of this Court has previously applied the ADA's pre-amendment standards to the KCRA. *See Larison v. Home of the Innocents*, 551 S.W.3d 36 (Ky. App. 2018). Therein, the Court held that "the KCRA retains the *former* definition of disability, prior to the 2008 Amendments of the federal law." *Id*. at 43 (emphasis in original) (citation omitted). We decline Turner's request to revisit *Larison*'s holding and echo the reasoning embraced by the United States District Court for the Western District of Kentucky:

> [t]he Court's research has revealed no published Kentucky cases addressing how the ADAAA affects, if at all, claims for disability discrimination brought under the KCRA. Federal courts continue to interpret the KCRA consistent with pre-ADAAA jurisprudence. Until such time as the Kentucky Supreme Court or General Assembly speaks on this issue, the Court will take that approach.

*Laferty v. United Parcel Serv., Inc.*, 186 F. Supp. 3d 702, 707 n.3 (W.D. Ky. 2016) (citations omitted).[7] Turner further argues, however, that even if we decline to

---

[7] *See also, e.g.*, *Watkins v. Shriners Hosps. for Children, Inc.*, No. 5:18-CV-548-REW-MAS, 2020 WL 2309468, at *9 (E.D. Ky. May 8, 2020) ("*Larison* . . . is controlling authority."); and *Hernandez v. Mayfield Consumer Products, LLC*, No. 2020-CA-0459-MR, 2021 WL 223530, at *5 (Ky. App. Jan. 22, 2021) (citation omitted) ("because the KCRA has not been amended to conform with the ADAAA, courts continue to interpret the KCRA consistently with pre-amendment ADA law.").

apply the amended language of ADAAA, Turner's breast cancer still constitutes a qualifying disability under the pre-amended version that is mirrored in the KCRA. We disagree.

### C. Application of the KCRA

To reiterate, disability is defined under KRS 344.010(4) as:

(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual;

(b) A record of such an impairment; or

(c) Being regarded as having such an impairment.

As also previously cited, major life activities under the KCRA include, "*among other things*, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Schave*, 127 S.W.3d at 592 (citations and footnotes omitted) (emphasis added). Therefore, although the statutory definition of disability under KRS 344.010(4) may not be as expansive as the ADAAA, courts have interpreted KRS 344.010(4) with a degree of elasticity to include at least rudimentary and fundamental daily tasks. Nevertheless, we cannot overly stress that the evidence cited by Turner at trial and in her argument on appeal concerning this issue omits any specific evidence of a qualifying disability under the KCRA. For example, during closing argument, Turner's counsel referenced the requirement of a substantial limitation on major life activities and

conceded that "we know [Turner] could do all of those things.  We know that [Turner] could go to work.  Let me tell you what [Turner] couldn't do.  She couldn't have her cells grow normally."  Norton objected and the trial court admonished Turner's counsel to conform her argument to the evidence presented.  Thereafter, Turner's counsel stated as follows:

> Joyce Turner had cancer – breast cancer.  If you didn't treat cancer, what do you think would happen?  What kind of major life activities would be impacted if you didn't treat the cancer that you discovered that you had?  How about all of them?  It's very likely, but what happened – cancer is a potentially fatal disease.  Joyce Turner was receiving treatment to stave off any impact to walking, talking, sleeping, thinking, all those things, because she wanted to live and not die.  Opposing counsel wants you to believe that [Turner's] cancer didn't impact any major life activity, but that's not what the case is.  Major life activities are all going to be impacted by cancer if it's not treated, and that's what was going to happen with [Turner].[8]

However, the pre-amendment version of the ADA has been interpreted as requiring "a person be presently – not potentially or hypothetically – substantially limited in order to demonstrate a disability."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482, 119 S. Ct. 2139, 2146, 144 L. Ed. 2d 450 (1999), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325 (eff. Jan. 1, 2009).  Rather, a

---

[8] Turner's closing argument was confined mostly to disputing the process and substance of Norton's investigation into her job performance, and therefore focusing on her termination as a pretext to the actual alleged reason that her employment was terminated, *i.e.*, her cancer.

"disability exists only where an impairment 'substantially limits' a major life activity, not where it might, could, or would be substantially limiting if mitigating measures were not taken." *Id.* (internal quotation marks omitted). And as previously stated, it is undisputed that Turner returned to work at Norton after her chemotherapy treatments with no restrictions. Turner also repeatedly testified that she had no physical limitations resulting from her cancer or its treatment other than brief occasions of fatigue, nausea, and hot-flashes. In fact, she was very adamant about how well she felt during her treatment. Lastly, at oral argument on appeal, Turner's counsel candidly stated:

> We did not argue that Turner could not work, that she could not take care of herself or perform manual tasks. What was argued, has always been, that her major life activity that was substantially limited was . . . . Normal cell growth was the major life activity at each point of this trial that was argued was substantially limited.

Although the tragedy of a cancer diagnosis and its accompanying tribulations are not remiss from our consideration, without clearly articulable evidence that conforms with KRS 344.010(4) and its associated case law, cancer cannot automatically be considered a qualifying disability. *See Watkins*, 2020 WL 2309468, at *10 (collecting cases) ("Unlike decisions applying the updated federal statute, pre-ADAAA cases generally have held that cancer is not a qualifying disability."). More precisely, although it is clear that cancer is often accompanied by physical or mental limitations, Turner has not presented any specific evidence

-14-

of a qualifying disability under the KCRA "upon which reasonable men could differ." *Storm*, 540 S.W.3d at 800 (citation omitted). Rather, Turner concedes that she argued throughout the litigation that the major life activity at issue was normal cell growth, which is not recognized under Kentucky law. Therefore, Norton was entitled to a JNOV. This is not to say that cancer cannot be a qualifying disability based on the specific evidence offered in certain cases. In the present case, however, no such evidence was presented.[9] In that same vein, Turner has not cited any sufficient evidence indicating that her employment was terminated because she was "regarded as having such an impairment." KRS 344.010(4)(c). Although Turner's supervisors were aware that she had cancer, that alone is insufficient to satisfy KRS 344.010(4). *See Hallahan*, 138 S.W.3d at 708 ("[t]he mere fact that [employer] had knowledge of [employee]'s medical problems, however, was not sufficient to show that it regarded him as having a disabling impairment.").

Lastly, in its "findings and purposes" for amending the ADA, Congress has expressed displeasure with courts' narrow interpretation of "the broad scope of protection intended to be afforded by the ADA." ADA Amendments Act of 2008, Pub. L. No. 110-325 (eff. Jan. 1, 2009). Accordingly,

---

[9] We reach this conclusion in consideration that the parties have had the opportunity to extensively brief this case and to present their arguments orally to the Court. We commend the presentation and arguments of both parties. Nevertheless, the evidence presented is insufficient to satisfy the KCRA's qualifying disability requirement.

Turner's argument is not without merit that the ADA and by analogy, the KCRA, could be broadly construed to include "normal cell growth" even if not expressly codified. Nevertheless, we must reiterate and ultimately conclude that "[u]ntil such time as the Kentucky Supreme Court or General Assembly speaks on this issue, the Court will take [the pre-ADAAA] approach." *Laferty*, 186 F. Supp. 3d at 707 n.3.

## D. Remaining Issues

Because Turner failed to demonstrate that she had a qualifying disability as a matter of law, this case should not have gone to trial. As a result, the trial court erred in failing to grant Norton's motion for a directed verdict, and its subsequent JNOV motion that is the subject of this appeal. Therefore, we need not address Norton's remaining post-trial motions, causation, damages, or any other factual questions. Turner's cross appeal concerning the offset of her back pay award resulting from her unemployment benefits is also now moot. However, it has become clear to this Court that it is necessary to clarify that the correct causal standard for disability discrimination cases brought under the KCRA is the "but-for" standard. *See, e.g.*, *Hammond v. Norton Healthcare, Inc.*, No. 2011-CA-000586-MR, 2012 WL 5039465 (Ky. App. Oct. 19, 2012); and *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) (en banc).

## CONCLUSION

For the foregoing reasons, we reverse the Jefferson Circuit Court's Order that denied Norton's JNOV motion with instructions to enter a judgment in favor of Norton, pursuant to its motion for a judgment notwithstanding the verdict.

ALL CONCUR.

BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

Donna King Perry
Jeremy S. Rogers
Robert C. Rives, IV
Amir J. Nahavandi
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT/CROSS-
APPELLEE:

Jeremy S. Rogers
Louisville, Kentucky

BRIEF FOR APPELLEE/
CROSS-APPELLANT:

Jeremiah W. Reece
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE/CROSS-
APPELLANT:

Jeremiah W. Reece
Louisville, Kentucky